Argued July 7, decided July 15, 1913.

## STATE EX REL. *v.* KELSEY.

(133 Pac. 806.)

**Municipal Corporations—Resolution—Enacting Clause.**

1. A resolution of a city containing an enacting clause, "Resolved that the people of the City of Gold Hill," etc., sufficiently complied with a charter provision that the enacting clause of every ordinance or resolution shall be, "The people of the City of Gold Hill do ordain or resolve," etc.

**Municipal Corporations—Charter—Council Authority—Mode of Exercise.**

2. Where a city charter delegates the decision of a matter to councilmen and does not express the mode to be pursued, the determination may be evidenced by resolution and need not be manifested by ordinance.

Municipal Corporations—Municipal Legislation—Manner of Exercise
—Initiative and Referendum Powers.

3.   Where a city charter was silent with respect to the matter of
municipal legislation, the manner of exercising the initiative and ref-
erendum powers when not violative of the state Constitution could as
well be prescribed by resolution as by ordinance.

Municipal Corporations—City Council—Legislative Power—Resolution
or Ordinance.

4.   An enactment of a city council that a special election of the
legal voters should be called to be held Monday, November 20, 1911,
to submit a proposed new charter to the people for their adoption or
rejection by first publishing the proposed charter in two issues of the
Gold Hill "News" on the 11th and the 18th of November, 1911, was in
substance and effect an ordinance or regulation, and its validity was
not affected by the fact that it was called a "resolution."

Municipal Corporations—Ordinances—Implied Repeal.

5.   A resolution of a city council that a special election of the legal
voters should be and was called, to be held November 20, 1911, to sub-
mit a proposed new charter to the people of Gold Hill for their adop-
tion or rejection by first publishing the proposed new charter in two
issues of the Gold Hill "News" on the 11th and 18th of November,
1911, constituted an implied repeal of a prior ordinance declaring that
not less than 10 days before a regular or special election at which any
proposed charter amendment might be submitted to the people the
recorder should cause to be printed in a newspaper of general circula-
tion a full and correct copy of the text of such measures with the
number and form in which the title thereof should be printed on the
official ballot and should cause similar copies to be posted in three
public places in the town for not less than 10 days immediately prior
to the election.

[As to implied power to repeal ordinances, see note in Ann. Cas.
1913D, 768.]

Municipal Corporations—Charter Election—Notice—Publication.

6.   Where a public notice of submission of a proposed new charter
to the voters of a city pursuant to a resolution informed them of the
time, place and object of the election and gave them nine days' notice
thereof, it was sufficient.

Municipal Corporations — Charter    Election — Notice—Publication—
Time.

7.   The council of a city as its governing legislative body has au-
thority to prescribe the number of days' notice of a special election
for the adoption of a new charter so long as the notice prescribed is
reasonable.

Municipal Corporations—Charter—Submission to Voters—Ballot Title.

8.   Where the ballot title of a new charter submitted at a special
election was printed in bold type, "For the proposed new charter," and
"Against the proposed new charter," it was not material that such
title did not comply strictly with the prior ordinance providing for
the submission of charter amendments and that the numbers used on
the ballot were not in compliance with such ordinance.

Municipal Corporations—New Charter—Limitation of Indebtedness— Legal Voters.

9.  Initiative power having been reserved to the "legal voters" of every municipality by Article IV, Section 1a, of the Constitution, a new charter properly provided that an election to authorize an increase of indebtedness should be by the "legal voters" instead of "property owners," as provided by the prior charter.

From Jackson: FRANK M. CALKINS, Judge.

Statement by MR. JUSTICE MOORE.

This is an action by the State of Oregon, on the relation of Josiah Beeman, against R. C. Kelsey, John Palmer, Joseph Dietrich, W. R. Walker, Frank Wilmarth, and George Landis to determine the right of each to act as an officer in the City of Gold Hill, a municipal corporation, which town was incorporated by an act of the legislature: Laws Or. 1895, p. 248. The charter was amended April 13, 1907, under an exercise of the initiative power reserved to the people of municipalities by the organic law: Const. Or., Art. IV, §§ 1, 1a. By this amendment the name of the municipality was changed to that of the City of Gold Hill and power was vested in a board of five councilmen to be elected annually on the first Monday in April and who were to hold office until their successors were regularly elected and duly qualified. It was the duty of the board to select a member thereof as president, who thereupon became *ex-officio* mayor.

At a regular election held April 3, 1911, Josiah H. Beeman, L. R. Cardwell, Walter Dungey, Samuel Hodges, and Henry Miller were chosen councilmen, and, each having duly qualified, Beeman was elected president of the board. The members thereof on August 7, 1911, enacted ordinance No. 64 which by its terms went into immediate effect and prescribed the manner of exercising the initiative and referendum powers reserved to the people. The ordinance was patterned largely after the provisions of Chapter 226,

Laws of Oregon 1907, and authorized the board to propose amendments to the charter by ordinance, resolution, or initiative petition. Section 6 of this enactment provided that, when any proposal to amend the charter was made, the recorder should cause to be printed official ballots, consecutively numbering the measures to be voted upon in the order of their filing, giving to the first expression of an affirmative choice the number ''400'' in numerals and to the negative ''401.'' Section 9 thereof declared that, not less than 10 days before any regular or special election at which any proposed charter amendment was to be submitted to the people, the recorder should cause to be printed in a newspaper of general circulation in Gold Hill ''a full and correct copy of the title and text of such measures so submitted with the number and form in which the ballot title thereof would be printed on the official ballot, and the recorder shall also cause similar copies to be posted in three public places in said town for a period of not less than 10 days immediately prior to such election.''

The board, desiring to amend the charter, appointed for that purpose a commission, and a proposed new charter, having been submitted, was approved by the board by resolution adopted October 10, 1911, but, a typographical error having occurred in printing the organic act, such resolution was revoked on the 24th of that month. Another resolution was adopted October 30, 1911, expressing a purpose to submit the proposed charter to the legal voters for adoption or rejection. A citizens' committee having suggested certain changes in the proposed charter, which alterations were approved by the commission, the board on November 6, 1911, adopted a further resolution directing the recorder to incorporate in the new organic act the modifications so recommended. The declaration

further provided as follows: "Therefore be it resolved by the city council that a special election of the legal voters shall be and is hereby called to be held Monday November 20, 1911, for the purpose of submitting a proposed new charter to the people of Gold Hill for their adoption or rejection, by first publishing the proposed new charter in two issues of the Gold Hill News of the 11th and the 18th of November, 1911." An emergency was declared to exist and that the resolution should be in full force and effect after its approval by the mayor, which officer immediately appended thereto his signature. The charter as changed was then ratified by the council, and the recorder was directed to give notice as indicated, which command was obeyed. A ballot title was also prepared, to which the numeral "10" was fixed to indicate an affirmative vote and "11" a negative. The proposed charter was also published in the Gold Hill "News" in its issues of November 11 and 18, 1911, but no copies were posted as required by ordinance No. 64. The special election was held at the time and place designated, when were cast 86 votes for the measure and 15 against it. The returns of the election were canvassed and the mayor on November 27, 1911, issued a proclamation declaring the new charter to be in force. Pursuant to its provisions an election was held in the city the first Monday in April, 1912, when were declared to be elected as councilmen all the defendants hereinbefore named except Kelsey, who was thereafter selected president of the board and *ex-officio* mayor, and each having taken an oath of office entered upon the discharge of the duties thereof.

The plaintiffs on September 18, 1912, asserting that in consequence of the failure to give the required notice the proposed new charter had not been legally enacted and that he and his associates, who were

elected April 3, 1911, and constituted the board of councilmen, instituted this action. The case, being at issue, was tried, and from a stipulation of the evidence by the parties the court made findings of fact in conformity therewith and in substance as hereinbefore set forth. Based on the conclusions of law deducible from the findings of fact, a judgment of ouster was rendered against each of the defendants and they appeal.

REVERSED.

For appellants there was a brief over the names of *Messrs. Neff & Mealey,* with an oral argument by *Mr. Porter J. Neff.*

For respondent there was a brief and an oral argument by *Mr. Allen E. Reames.*

MR. JUSTICE MOORE delivered the opinion of the court.

It will be remembered that ordinance No. 64, prescribing the manner of exercising the initiative power in the City of Gold Hill, required the recorder at every election to cause to be printed in consecutive order on the official ballot the title of all measures to be voted upon, the affirmative of the first measure to be designated by the number "400" and the negative by "401"; that, not less than 10 days before any regular or special election at which any proposed charter amendment was to be submitted to the people, that officer was, by the enactment referred to, commanded to cause to be printed in some newspaper a full and correct copy of the title and text of the measure, and also to cause copies of the proposed charter to be posted, for the same length of time, in three public places in Gold Hill. It will also be recalled that the numbers placed on the official ballot were "10" and

"11"; that notice of the election was published on November 11 and 18, 1911, and as the vote was taken on the 20th of that month only nine days' notice was given; and that copies of the proposed charter were never posted.

It is maintained by defendant's counsel that the resolution of November 6, 1911, pursuant to which the notices referred to were given, was adopted and approved with all the formalities required for the enactment of an ordinance; that it had enacting and emergency clauses and was approved by the mayor; that it was in substance an ordinance, though denominated a resolution, and to the extent specified it impliedly amended ordinance No. 64, and, such being the case, an error was committed in rendering the judgment herein.

An examination of the provisions of the charter of the City of Gold Hill, as amended April 13, 1907, and which were in force November 6, 1911, when the resolution of the latter date was adopted, shows that the authority of the councilmen to enact ordinances or resolutions was general and granted as follows: "The board shall have power to pass all resolutions and ordinances necessary to enable it to carry out the provisions of this charter": Section 16. "The enacting clause of every ordinance or resolution shall be 'The people of the City of Gold Hill do ordain or resolve,' and every ordinance and resolution to be valid must receive the affirmative vote of three members of the board of councilmen, the president being allowed to vote on all questions, and when the roll is called the name and vote of each member must be entered in the journal": Section 17. These are the only provisions found in the charter adverted to relating to matters inherently legislative in character. The only provisions in the charter respecting notice applies to the

general election to be held annually on the first Monday in April and are as follows:

"The board of councilmen shall at their meeting on the first Monday in March of each year order the recorder to post three conspicuous notices in three conspicuous places in said city calling for a primary election by the people to be held at least eighteen days prior to the date of the following election. * * At the time of posting the notices aforesaid the recorder shall also post notices in three conspicuous places in said city announcing that there will be an annual election held at the place therein designated. * * " Section 7.

1. The enacting clause of the resolution of November 6, 1911, is as follows: "Resolved that the people of the City of Gold Hill," etc. It will be noticed that the clause does not exactly coincide with the form prescribed, but there is no difference in the meaning of the terms employed. The court's finding is to the effect that at the meeting of November 6, 1911, all the members of the board of councilmen were present and that the resolution was passed unanimously. An emergency was declared in the resolution to exist in consequence of the necessity of securing an adequate supply of water, and that the legislation would be in full force and effect after its approval by the mayor, which sanction was given by that officer.

It does not appear from the record before us that any rules of order had been adopted by the board of councilmen respecting the manner of entering upon the journal the mode pursued in the enactment of legislative matters. The court found, however, that, when the amendments proposed by the citizens' committee had been approved and incorporated in the charter, the act was read there several times and ratified by the board. It is not shown that an ordinance or a resolution was required to be published before it could go into effect.

2. Where a municipal charter permits the decision of a matter to councilmen and does not express the mode to be pursued, the determination may be evidenced by a resolution and need not be manifested by an ordinance: Dillon, Mun. Corp. (5 ed.), § 572; *Clinton* v. *Portland,* 26 Or. 410 (38 Pac. 407).

3. The charter being silent with respect to the matter of municipal legislation, the manner of exercising the initiative and referendum powers, when not violative of the state Constitution, could as well have been prescribed by a resolution as by an ordinance: McQuillin, Mun. Ordinances, § 2, note 8.

4. The resolution of November 6, 1911, was in substance and effect an ordinance or regulation, and the name given to it by the councilmen was immaterial and did not render the enactment void: Dillon, Mun. Corp. (5 ed.), § 571; *Municipality No. 1* v. *Cutting,* 4 La. Ann. 335.

5. Though repeals by implication are not favored, the resolution in question impliedly changed as much of the ordinance as was in conflict therewith.

6. The notice published, pursuant to the resolution, informed the legal voters of Gold Hill of the time, place and object of the special election which prerequisites are essential in elections of that kind, and in these particulars the notice was sufficient.

7. By requiring the notice to be published on the 11th and 18th of November, 1911, when the election was to be held on the 20th of that month, the board knew that only nine days' possible publication could be given, but such legislative body had as much authority to prescribe that number of days in the resolution as they had to designate a different number in the ordinance. The notice required should be reasonable and that given answered such precept.

8. The resolution made no reference to the number to be placed on the official ballot, while the ordinance particularly specified the numerals to be used. The ballot title employed did not comply therewith, but this failure evidently did not mislead any voter, for the phrases, "For the proposed new charter," and "Against the proposed new charter," were printed in bold type, calling particular attention to the choice to be expressed by the elector, regardless of the number employed, and this was sufficient: *Kiernan* v. *Portland*, 57 Or. 454, 462 (111 Pac. 379, 112 Pac. 402, 37 L. R. A. (N. S.) 339).

9. The charter of April 13, 1907, limited the amount of indebtedness that might be incurred by the board of councilmen to $1,500. By calling an election of the "property owners" of the city to vote thereon, a greater indebtedness might be sanctioned, provided that all sums in excess of $1,500 per annum should be evidenced by municipal bonds. The charter adopted November 20, 1911, changed the phrase "property owners" to "legal voters of the city" who could in the same manner authorize the issuance of municipal bonds in the sum of $25,000. As the initiative power is reserved "to the legal voters of every municipality" as to all municipal legislation of every character in or for their respective municipalities (Article IV, Section 1a of the Constitution), the alteration in the new charter recognized the right of franchise of every voter unfettered by a property qualification.

Believing that the amended charter was enacted pursuant to proper and adequate notice, the judgment is reversed and one will be entered dismissing the action.    REVERSED: ACTION DISMISSED.

MR. CHIEF JUSTICE MCBRIDE and MR. JUSTICE RAMSEY concur.

MR. JUSTICE BURNETT dissents.