Argued October 11, 1974, affirmed as modified April 1, 1975

BAKER, *Plaintiff, v.* CITY OF
MILWAUKIE ET AL, *Defendants,*
ARCHER ET AL, *Intervenors.*

533 P2d 772

*Steven R. Schell,* Portland, argued the cause for plaintiff. With him on the briefs was Craig M. Chisholm, Portland.

502

*Myer Avedovech,* City Attorney, Milwaukie, argued the cause and filed a brief for defendants.

*Gary M. Bullock,* Portland, argued the cause and filed a brief for intervenors.

*Edward J. Sullivan,* Hillsboro, argued the cause and filed a brief on behalf of the Oregon Environmental Council and the Oregon Chapter of the American Institute of Planners as amici curiae. William P. Hutchison, Portland, filed a brief for Oregon Environmental Council as amicus curiae. R. P. "Joe" Smith, Portland, filed a brief for Northwest Environmental Defense Center as amicus curiae.

Before O'CONNELL, Chief Justice, and McALLISTER, HOLMAN, TONGUE, HOWELL, SLOPER and LEAVY, Justices.

HOWELL, J.

This is an appeal from the dismissal of a writ of mandamus. The plaintiff sought to compel the City of Milwaukie to conform a zoning ordinance to its comprehensive plan, to cancel a variance approved by the Milwaukie Planning Commission, and to suspend the issuance of building permits in areas of the city where the zoning ordinance allows a more intensive use than that set forth in the comprehensive plan. The trial court sustained the City's demurrer to the alternative writ. The plaintiff refused to plead further and the court dismissed the writ. The Court of Appeals reversed the action of the trial court but on grounds not substantially in favor of the plaintiff, and plaintiff's petition for review to this court was allowed.

Basically, the petition for the alternative writ states that plaintiff is a landowner in the City of Milwaukie. On October 17, 1968, the City of Milwaukie

adopted a zoning ordinance which designated plaintiff's land and the surrounding area "A 1 B" (residential apartment-business office). This category allowed 39 units per acre.[1] On November 11, 1969, a comprehensive plan for the City of Milwaukie was adopted by the Planning Commission. This comprehensive plan designated plaintiff's land and the surrounding area as high density residential, allowing 17 units per acre. On January 12, 1970, the Milwaukie City Council passed a resolution adopting the above plan as the comprehensive plan for the City of Milwaukie.[2]

On February 27, 1973, without public hearing and against staff recommendation, the Milwaukie City Planning Commission granted a variance authorizing a proposed 95-unit apartment complex near plaintiff's property with one and one-half parking spaces per unit rather than the required two.

Subsequent to the granting of the variance, an application was made for a building permit for the construction of a 102-unit apartment on property immediately adjacent to plaintiff's property. This 102-unit complex would result in 26 units per acre— less than the 39 units allowed by the zoning ordinance but substantially more than the 17 units allowed by the comprehensive plan.

After demand was made on the City Council and the Building Inspector to conform the zoning ordinance to the comprehensive plan, to cancel the

[1] Intervenors in this suit were purchasers of property in this area who alleged they had been granted building permits based upon the zoning ordinance.

[2] For the purposes of this appeal we accept as true all facts well pleaded and all the intendments and inferences therefrom that can reasonably be drawn. See Harding v. Bell, 265 Or 202, 508 P2d 216 (1973).

variance previously granted, and to suspend the issuance of building permits where the zoning in the city did not conform to the comprehensive plan, the plaintiff brought this proceeding. Her petition alleged, in relevant part:

"VIII

"Even though obligated to do so and even though more than three years have expired between approval of the comprehensive plan and the present, Defendants City Councilmen have not even though they have a duty to do so, taken steps to modify the zoning in the area of concern to conform to the comprehensive plan for such area. Defendant inspector has failed or refused to indicate that he will suspend issuance of a building permit for the area of concern until such time as the zoning of the City of Milwaukie conforms to the comprehensive plan for such city."

■ The defendants filed a return to the alternative writ in which they state:

"The defendants have not done as they were herein commanded, and the cause of their omission is that there is no obligation that the zoning ordinance of the city of Milwaukie be conformed to the comprehensive plan subsequently adopted by resolution."

At the same time the defendants demurred to the petition on the grounds that several causes of action were improperly united and that the petition did not state facts sufficient to constitute a cause of action. The trial court sustained the demurrer on the grounds that the "facts set forth in the petition are insufficient to sustain the relief prayed for in the petition." The trial court did not rule on defendants' demurrer that several causes of action were improperly united.⑧

---

⑧ Pleadings in a mandamus proceeding are analogous to those

The Court of Appeals reversed solely on the ground that the plaintiff had alleged sufficient facts to support her claim with regard to the improper granting of the variance.④ In all other respects the Court of Appeals held that the facts stated in the petition were insufficient. *Baker v. City of Milwaukie,* 17 Or App 89, 520 P2d 479 (1974). We granted review to consider the effect of the adoption, by a municipality, of a comprehensive plan on preexisting and conflicting zoning ordinances.

*The Comprehensive Plan is the Controlling Land Use Planning Instrument for the City of Milwaukie*

The defendants argue that "the zoning ordinance would govern land use with a definite and precise requirement, and would control over the comprehensive plan." Thus the defendants contend that although the City has passed a comprehensive plan, there is no duty to effectuate it through the enactment of conforming zoning ordinances. They further argue that the present conflicting zoning ordinances remain in effect until the City decides to replace them with ordinances which are in accord with the comprehensive plan.

We agree with the plaintiff and the amici curiae (Northwest Environmental Defense Center, Oregon Environmental Council, and Oregon Chapter of the American Institute of Planners) that the position of defendants evidences a fundamental misunder-

---

in an action at law. ORS 34.170. Failure to raise an objection that several causes of action were improperly united prior to the filing of an answer waives such objection. *See* Clark on Code Pleading 532, § 85 (1947).

④ The variance issue has not been appealed by the defendants to this court.

standing of the relationship between planning and zoning.

In order to answer the question of whether a city, once it has adopted a comprehensive plan, has a duty to zone in accord with that plan, it is first necessary to discuss the relationship between planning and zoning.

■ This court has recently recognized the controlling effect of the comprehensive plan on land use planning in a community:

> "The basic instrument for county or municipal land use planning is the 'comprehensive plan.' * * * The plan has been described as a general plan to control and direct the use and development of property in a municipality. * * *" *Fasano v. Washington Co. Comm.,* 264 Or 574, 582, 507 P2d 23 (1973) (citations omitted).

Zoning, on the other hand, is the means by which the comprehensive plan is effectuated.

■ This servient relationship of zoning to planning was acknowledged in Oregon in 1919 with the passage of the requirement that municipal zoning be "in accord with a well considered plan."[5] *See* Or Laws 1919, ch 300; ORS 227.240(1). " 'Instead of being the city plan, for which it is so often mistaken, * * * zoning is but one of the devices for giving effect to it.' " Haar, The Master Plan: An Impermanent Constitution, 20 Law & Contemp. Prob. 353, 362 (1955).[6] *See also*

---

[5] In this context there appears to be no functional distinction between the terms "comprehensive plan," "master plan," "general plan," and "well considered plan." *See* 1 Rathkopf, The Law of Zoning and Planning 9-1 (1959); Haar, The Master Plan: An Impermanent Constitution, 20 Law & Contemp. Prob. 353, 354 (1955).

[6] As noted by the Attorney General of Oregon:

"* * * The comprehensive plan is not *merely* a guideline

*Udell v. Haas*, 21 NY2d 463, 288 NYS2d 888, 235 NE2d 897 (1968).

Some writers have likened the comprehensive plan to a constitution. Thus it has been said that a comprehensive plan is a "constitution for all future development within the city." *O'Loane v. O'Rourke*, 231 Cal App 2d 774, 782, 42 Cal Rptr 283, 288 (1965).

> "* * * If the plan is regarded not as the vest-pocket tool of the planning commission, but as a broad statement to be adopted by the most representative municipal body—the local legislature—then the plan becomes a law through such adoption. A unique type of law, it should be noted, in that it purports to bind future legislatures when they enact implementary materials. So far as impact is concerned, the law purports to control the enactment of other laws (the so-called implementary legislation) solely. It thus has the cardinal characteristic of a constitution. * * *" Haar, supra at 375.

While this analogy between a comprehensive plan and a constitution may be helpful in determining the relationship between planning and zoning, it must be remembered that the comprehensive plan is flexible and subject to change when the needs of the community demand. "[U]nlike [a constitution] it is subject to amendatory procedures not significantly different from the course followed in enacting ordinary legislation." Haar, supra at 375.

In the instant case, as noted above, the zoning

---

which may be followed or disregarded at will; although the zoning ordinances establish the detail they must do so within the policies established by the comprehensive plan. The comprehensive plan is thus analogous to legislation granting rulemaking power but establishing the purpose for which and the limits within which that power may be exercised." (Emphasis in original) 36 Op Or AG 1044, 1046 (1974).

ordinance was passed in October, 1968. The comprehensive plan was adopted by the Planning Commission in November, 1969, and adopted by the City Council in January, 1970. The plan recites:

"The City of Milwaukie has adopted a new zoning ordinance [apparently referring to the ordinance enacted in October, 1968] that was developed in conjunction with the Comprehensive Plan. Basic features of the new ordinance as adopted are consistent with the Plan described in this report."

Plaintiff alleges that an examination of the ordinance and the plan shows that a conflict exists, at least in the area in question in this case.[7]

■ The defendants argue, and the Court of Appeals held, that there is no duty[8] to adopt a written comprehensive plan such as that adopted by the City of

[7] The fact that the zoning ordinance was "developed in conjunction with the Comprehensive Plan" and yet conflicts with that very plan is itself strong evidence that proper planning did not go into the development of the zoning ordinance and that that ordinance is not "in accord with a well considered plan." ORS 227.240(1).

[8] Prior to 1973 there was some disagreement as to whether municipalities were required to adopt a comprehensive plan. Or Laws 1969, ch 324 (ORS 215.505 et seq.) at least express a state policy in favor of comprehensive planning at all levels of government. Any ambiguity in this area has been cleared up through the passage of Or Laws 1973, ch 80 (ORS ch 197). ORS 197.175(2) provides:

"(2) Pursuant to ORS 197.005 to 197.430, 215.055, 215.510, 215.515, 215.535 and 453.345, each city and county in this state shall: ·

"(a) Prepare and adopt comprehensive plans consistent with state-wide planning goals and guidelines approved by the commission; and

"(b) Enact zoning, subdivision and other ordinances or regulations to implement their comprehensive plans."

ORS 197.015(4) provides:

"(4) 'Comprehensive plan' means a generalized, coordinated land use map and policy statement of the governing body of a

Milwaukie. However, this begs the question. The fact is that the City of Milwaukie *has* adopted a comprehensive plan. And that plan is "the basic instrument for county or municipal land use planning." *Fasano v. Washington Co. Comm.,* supra at 582. If that plan is to have any efficacy as the basic planning tool for the City of Milwaukie, it must be given preference over conflicting prior zoning ordinances. To hold otherwise would allow a city to go through the motions and expense of formulating a comprehensive plan and then relegating that document to oblivion through continued reliance on the older zoning ordinances.[⑨]

■■ We agree with the Supreme Court of Pennsylvania, which held in *Eves v. Zoning Bd. of Adjustment of Lower Gwynedd Twp.,* 401 Pa 211, 164 A2d 7, 10 (1960):

"The role of the township supervisors in the

---

state agency, city, county or special district that interrelates all functional and natural systems and activities relating to the use of lands, including but not limited to sewer and water systems, transportation systems, educational systems, recreational facilities, and natural resources and air and water quality management programs. 'Comprehensive' means all-inclusive, both in terms of the geographic area covered and functional and natural activities and systems occurring in the area covered by the plan. 'General nature' means a summary of policies and proposals in broad categories and does not necessarily indicate specific locations of any area, activity or use. A plan is 'coordinated' when the needs of all levels of governments, semi-public and private agencies and the citizens of Oregon have been considered and accommodated as much as possible. 'Land' includes water, both surface and subsurface, and the air."

*See* Macpherson and Paulus, *Senate Bill 100: The Oregon Land Conservation and Development Act,* 10 Will L J 414 (1974); 36 Op Or AG 960, 972 (1974).

⑨ The petition in the instant case alleges:

"VI

"Petitioner Baker and her husband purchased their property in reliance on the comprehensive plan."

field of zoning, as contemplated by the enabling legislation, emerges quite clearly upon consideration of the power granted the supervisors and the duties they are bound to perform. *Their duty is to implement the comprehensive plan by enacting zoning regulations in accordance therewith.* * * *"* (Emphasis added.)

Likewise, the City of Milwaukie, upon adopting a comprehensive plan, had a duty to implement that plan through the enactment of zoning ordinances in accordance therewith.[⑩]

*A Properly Enacted Comprehensive Plan, Although Denominated a "Resolution," Controls Zoning Decisions in the City of Milwaukie.*

■ The Court of Appeals, in holding that "the zoning ordinance is the controlling document in the city of Milwaukie zoning scheme" (98 Adv Sh at 1682), relied in part on the fact that the comprehensive plan was adopted by resolution rather than by ordinance:

"* * * First, it should be noted that a resolution is not law but merely a form in which the legislative body expresses an opinion. *Rowley v. City of Medford,* 132 Or 405, 414, 285 P 1111 (1930). * * *" *Baker v. City of Milwaukie,* supra at 1681.

The above holding is a correct statement of the law. However, it does not settle the question of whether the comprehensive plan of Milwaukie controls zoning decisions.

■■ To determine the true character of a legisla-

---

[⑩] This opinion deals only with the question of the effect of the enactment of a comprehensive plan on conflicting zoning ordinances. Of course, where the plan adopts general parameters of long term growth with a provision that the intensity of use or the density of living units shall not exceed a certain amount, a more restrictive zoning ordinance may be in accord with that plan. However, between the time of the enactment of the comprehensive plan and the implementing zoning ordinances, no land use may occur which would exceed the limits set by the plan.

tive enactment it is necessary to look beyond the title. 5 McQuillin on Municipal Corporations § 15.02 (1969) states:

"* * * [I]t may be observed that a resolution deals with matters of a special or temporary character; an ordinance prescribes some permanent rule of conduct or government, to continue in force until the ordinance is repealed. An ordinance is distinctively a legislative act; a resolution, generally speaking, is simply an expression of opinion or mind concerning some particular item of business coming within the legislative body's official cognizance, ordinarily ministerial in character and relating to the administrative business of the municipality." McQuillin, supra at 43-44. (Footnotes omitted.)

"Generally, whether what is done by a municipal legislative body is an ordinance or a resolution depends not on what the action is called but on the reality. * * *[W]here a resolution is in substance and effect an ordinance or permanent regulation, the name given to it is immaterial. If it is passed with all the formalities of an ordinance it thereby becomes a legislative act, and it is not important whether it be called ordinance or resolution." McQuillin, supra at 46. (Footnotes omitted.)

1A Sutherland on Statutory Construction 346, § 30.03 (Municipal Resolutions) (4th ed 1972) states:

"* * * It is not necessary that the action be called an 'ordinance' for the name is immaterial. If the regulation is permanent in nature and it has been enacted in the requisite manner, it will be enforced as an ordinance." (Footnote omitted.)

The approach of looking to the substance of the action rather than the mere title has been followed in Oregon. In *State ex rel. v. Kelsey,* 66 Or 70, 78, 133 P 806 (1913), the court held:

"The resolution of November 6, 1911, was in sub-

stance and effect an ordinance or regulation, and the name given to it by the councilmen was immaterial and did not render the enactment void: [citing authority]."

*See also State v. Bozorth,* 84 Or 371, 374, 164 P 958 (1917).

Thus it is necessary for this court to determine whether a comprehensive plan is legislative and permanent in nature or administrative and temporary.[①]

In an exhaustive opinion, the California Court of Appeals dealt with the question of whether a comprehensive plan, adopted as a resolution, was a legislative or administrative act. *O'Loane v. O'Rourke,* 231 Cal App 2d 774, 42 Cal Rptr 283 (1965). In that case, as in the instant case, the argument was made that "the general plan is not a zoning ordinance, that it has no legislative effect, that the adoption of such a plan is an administrative and executive act and not a legislative act." 231 Cal App 2d at 779. With regard to the nature of the general plan, the court said:

> "It is apparent that the plan is, in short, a constitution for all future development within the city. No mechanical reading of the plan itself is sufficient. To argue that property rights are not affected by the general plan (as the city so asserts) as adopted ignores that which is obvious. Any zoning ordinance adopted in the future would surely be interpreted in part by its fidelity to the general plan as well as by the standards of due process. Frequently it has occurred that where a general plan was adopted, and later a zoning change was made which appeared to be in accord with the plan, that fact in and of itself was some evidentiary weight in the determination as to whether the zon-

---

[①] If it is found that the comprehensive plan is legislative and permanent in nature, for the purposes of the demurrer to the petition we shall presume that it was passed with the requisite formalities. ORS 41.360(15).

ing ordinance was proper or otherwise. If the general plan is anything at all, it is a meaningful enactment and definitely affects the community and, among other things, changes land market values. The general plan is legislatively adopted by the council. True, it is couched in part in general terms, but there are many specifics, and once adopted it becomes very effective. Many facets of activities between other public agencies and the city are effectively determined by the plan. Any subdivision or other development would necessarily be considered in its relation to the general plan, and such consideration practically by itself would be a sufficient legislative guide to the exercise of such discretions." 231 Cal App 2d at 782-83.

Finally, the court held:

"The adoption of the general plan is, in effect, the adoption of a policy, and in many respects, entirely new policy. The plan is of permanent and general character, it is a declaration of public purpose and, as such, supposedly sets forth what kind of a city the community wants and, supposedly, represents the judgment of the electors of the city with reference to the physical form and character the city is to assume." 231 Cal App 2d at 785.

*See also* Haar, *In Accordance with a Comprehensive Plan,* 68 Harv L Rev 1154, 1175 (1955).

The Attorney General of Oregon has also reached the conclusion that the comprehensive plan is legislative in nature. "The comprehensive plan thus has all the characteristics of legislation * * *." 36 Op Or AG 1044, 1046 (1974).[24]

If this court is to give the comprehensive plan

---

[24] Although both O'Loane v. O'Rourke, 231 Cal App 2d 774, 42 Cal Rptr 283 (1965), and the Attorney General agreed that the comprehensive plan is legislative in nature, the California court held that the comprehensive plan was subject to referendum by local petition, while the Oregon Attorney General held that it was not.

the meaningful and dominant role anticipated by the 1919 Oregon Legislature (Or Laws 1919, ch 300, § 2; now ORS 227.240(1)) and reaffirmed by the 1973 Legislature (ORS ch 197), it must view the plan as legislative and permanent in nature. To hold otherwise would relegate the comprehensive plan to the role of "a vest-pocket tool of the planning commission." Haar, *The Master Plan: An Impermanent Constitution,* supra at 375. And our conclusion is the same although the comprehensive plan in the instant case was designated a "resolution."[14]

*Conclusion*

■ In summary, we conclude that a comprehensive plan is the controlling land use planning instrument for a city. Upon passage of a comprehensive plan a city assumes a responsibility to effectuate that plan and conform prior conflicting zoning ordinances to it. We further hold that the zoning decisions of a city must be in accord with that plan and a zoning ordinance which allows a more intensive use than that prescribed in the plan must fail.[15]

---

[14] Prior to 1973, the legislature appears to have given its approval to the adoption of the comprehensive plan, at least for counties, by means other than ordinance. Under ORS 215.050 (amended by Or Laws 1973, ch 552, § 4) the county planning commission adopted the comprehensive plan and the governing body of the county put the plan into effect through the adoption of ordinances.

Under the 1973 amendments to ORS 215.050 the county governing body must adopt the comprehensive plan. However, plans adopted by the planning commission prior to the effective date of the amendment are not invalidated.

As a planning commission may not pass an ordinance, the conclusion is inescapable that the legislature, prior to 1973, did not require comprehensive plans to be adopted by ordinance. *See* Fasano v. Washington Co. Comm., 264 Or 574, 582, 507 P2d 23 (1973).

[15] In deciding that the ordinance must be in conformance with the comprehensive plan we do not indicate what should or should not be included in such ordinance or the precise time that the ordinance should be enacted.

 In the instant case, we agree with the Court of Appeals that the plaintiff has stated a cause of action with regard to the granting of the variance. We further hold that the plaintiff has stated a cause of action in seeking to compel the City of Milwaukie to conform its zoning ordinances to the comprehensive plan and to suspend the issuance of building permits in violation of the plan. This case must go beyond the pleading stages to determine whether, in fact, the zoning ordinance is in accord with the comprehensive plan, whether the comprehensive plan was validly enacted, and whether the variance was properly granted.

Defendants' demurrer should have been overruled.

Affirmed as modified.

LEAVY, J., Pro Tempore, dissenting.

I would affirm the decision of the Court of Appeals. Cities are authorized to pass zoning ordinances under ORS 227.220. Until the passage of ORS ch 197 by the 1973 Legislature there was no duty to do so. Under ORS 227.240 the council, in passing zoning regulations, is required to *give reasonable consideration,* among other things, to the character of the district, its peculiar suitability for particular uses, the conservation of property values, and the direction of building development in accord with a well-considered plan.

According to the petitioner, the council adopted a comprehensive plan by resolution after the passage of its ordinance of 1968. Presumably, the 1968 ordinance was passed after giving reasonable consideration to various factors, including the direction of building development, in accord with a well-considered plan.

I know of no authority, nor has any been cited

by the majority, which holds that the adoption of a comprehensive plan makes a prior ordinance invalid, nor would I treat adoption of a plan to be of such legislative magnitude that by its very nature it telescopes implementary legislation into planning. The majority reaches today's result by selective citation from the statutory scheme of ORS ch 197 (which on its face deals only with statewide planning goals and objectives and has its own mechanism of enforcement and redress of private wrongs), and by selective quotation of Professor Haar and citation of rezoning and referendum cases. Today's holding, depending upon the outcome of a trial, will leave a council with no discretion in enacting zoning ordinances, a result totally unwarranted by the plain language of the zoning-enabling statutes found in ORS ch 227.

I therefore respectfully dissent.