Argued September 19, reversed November 10, reconsideration denied December 17, 1975, petition for review allowed February 10, 1976. 

GREEN ET AL, *Appellants, v.* HAYWARD ET AL
(Nos. 73-3375, 73-3376) (CA 3897, 3898),
*Respondents-Cross-Appellants,* BOHEMIA, INC.,
*Intervenor-Respondent-Cross-Appellant.*

542 P2d 144

*George J. Woodrich,* Eugene, argued the cause for

appellants. With him on the briefs were Thompson, Mumford, Woodrich & Anderson, Eugene.

,, *Thomas M. Allen,* Eugene, argued the cause for respondents-cross-appellants and intervenor-respondent-cross-appellant. With him on the briefs were Butler, Husk & Gleaves and Larry D. Thomson and Joseph J. Leahy, Office of Legal Counsel, Eugene.

Before SCHWAB, Chief Judge, and LANGTRY and FOLEY, Judges.

FOLEY, J.

■ This is an appeal from the dismissal of writs of review challenging the rezoning ordinance and intent to rezone order[1] of two adjacent parcels of land by the Lane County Board of Commissioners. Both parcels had been zoned AGT (agricultural, grazing and timber raising) in 1966. The purpose of the rezoning was to change both parcels to M-3 (heavy industrial district). On this consolidated appeal petitioners challenge the

---

[1] Order-of-intent procedures are apparently set forth in Lane County Code, Chapter 10 (Zoning). That portion of Chapter 10 was not made part of the record. Petitioners stated in their brief that the order of intent to rezone in essence granted rezoning conditioned upon later approval of a site plan showing the method of utilization of the property. Respondents and intervenor characterized the result of the order as follows:

> "The intent to rezone mechanism which applied to the additional 90 acres does not merely permit any industrial use of the property, but requires development in a very specific manner agreed upon by the County and [Bohemia] in advance, forming a contract between the two.* * * "

All of the parties agree that the Board of County Commissioners made a quasi-judicial decision in adopting the resolution of intent to rezone. Accepting the parties' analysis of the effect of the intent-to-rezone procedures, and absent any contrary analysis, we conclude that such "determination to change the zoning" is reviewable. Fasano v. Washington Co. Comm., 264 Or 574, 581, 507 P2d 23 (1973). We note that the term "intent to rezone" is not used in the zoning statutes and we do not find the term in any of the zoning texts.

validity of the order of intent to rezone and the rezoning ordinance. Respondents and intervenor, Bohemia, Inc., cross-appeal from orders denying their motion to quash the writs and denying reconsideration of the motion.

On March 14, 1973, Bohemia, Inc., filed a request with the Lane County Planning Commission to rezone approximately 140 acres of land situated two miles north of the city of Coburg to M-3. The acreage included a 50-acre mill site already in use by Bohemia pursuant to a conditional use permit.[2] Also included for rezoning was an adjacent 90-acre tract of agricultural land, which Bohemia had subsequently purchased.

Prior to the request for rezoning, the Lane County Board of Commissioners had adopted by resolution in 1972 the Eugene-Springfield Metropolitan Area 1990 General Plan. This comprehensive plan included statements of goals and recommendations to guide development of the Eugene-Springfield metropolitan area and designated the permissible use of the land in controversy as agricultural. This comprehensive plan was also adopted by the Eugene City Council, the Springfield City Council, and the Lane Council of Governments.

At the time this proceeding was commenced, the Lane County Planning Commission had under formulation and study preliminary drafts of a county plan which recognized existing commercial uses in rural areas as desirable and recommended logical growth of such uses with certain qualifications. The preliminary draft of the county plan had not been formally adopted

---

[2] Petitioners point out that it was necessary to seek rezoning of the mill site because under the Lane County Code that was the only method of expanding a conditional use which had been preceded by a nonconforming use.

at the time of the request for rezoning. On the basis that the requested change complied with the preliminary county plan, the Lane County planning staff recommended approval of the request in the form of an intent to rezone as to the 90 acres and rezoning as to the 50-acre mill site. After a public hearing, the Lane County Planning Commission approved the change. The Board of County Commissioners subsequently conducted a consolidated hearing, made findings of fact, and approved the rezoning and intent to rezone by separate documents.

## I. The cross-appeals

Cross-appellants contend that the circuit court did not have jurisdiction to enter a judgment in this case because the writs of review were issued on the basis of petitions not verified by attorney's certificates as required by ORS 34.030.[9] Although the petitions and attorney's certificates were filed within the mandatory 60 days, the orders for the writs of review were issued by the court four days prior to the filing of attorney's certificates. It is argued that the court was not authorized to issue the writs before the certificates were filed and that this defect has not been corrected.

■ We hold that a writ of review is not jurisdiction-

---

[9]

"The writ shall be allowed by the circuit court or judge thereof, or, in counties where the county court has judicial functions, by the county court or judge of the county wherein the decision or determination sought to be reviewed was made, upon the petition of the plaintiff, describing the decision or determination with convenient certainty, and setting forth the errors alleged to have been committed therein. The petition shall be signed by the plaintiff or his attorney, and verified by the certificate of an attorney to the effect that he has examined the process or proceeding, and the decision or determination therein, and that it is erroneous as alleged in the petition. A writ shall not be allowed unless the petition therefore is made within 60 days from the date of the decision or determination sought to be reviewed." ORS 34.030.

ally defective when issued prior to the filing of the attorney's certificate where, as here, the certificate is filed within the 60-day limitation imposed by the statute. The statute merely requires that the certificate verify the allegations in the petition and does not condition jurisdiction on the simultaneous filing of the certificate with the petition. We believe it comports with justice to refrain from an overly technical interpretation of the statute which could result in the dismissal of a writ when both the petition and the certificate are filed within the time period allowed by the statute. *See Meury v. Jarrell,* 269 Or 606, 525 P2d 1286 (1974).

■ It is also contended by cross-appellants that the petitions filed by petitioner did not allege facts sufficient to justify issuance of the writs of review. ORS 34.030 requires that the petition describe the decision or determination sought to be reviewed with convenient certainty and set forth therein the errors alleged to have been committed. We find that the petition filed in this case met the statutory requirement and was properly allowed by the circuit court.[4] Although several of the errors set forth are conclusory in nature, the petition adequately advised the court and the respondents of the particular questions to be considered in determining the merits of the controversy.

---

[4] In abbreviated form here, the petitioner alleged that:

1. The zone change was not in conformance with the 1990 Plan.

2. The Board improperly relied upon a preliminary plan.

3. There was insufficient showing of public need by the applicant considering the availability of other land presently zoned for heavy industry.

4. Most of the land rezoned has a soil classification "good" and is essentially prime agricultural land, contrary to one commissioner's findings.

5. Goals of the 1990 Plan would be seriously jeopardized by the rezoning. Those aspects of the plan were specifically pointed out in the petition.

*See White v. Brown,* 54 Or 7, 101 P 900 (1909). *See also, Fasano v. Washington Co. Comm.,* 264 Or 574, 507 P2d 23 (1973), and *Baker v. City of Milwaukie,* 271 Or 500, 533 P2d 772 (1975).

■ Finally, we consider cross-appellants' contention that the circuit court did not have good cause to vacate its initial judgments in this case. We find that the action of the trial court in vacating its initial orders was within its inherent power and not an abuse of discretion. *Bailey v. Steele,* 263 Or 399, 502 P2d 586 (1972). The trial court had good reason to vacate its prior judgments because the findings recited therein were insufficient as special findings. *See Zuccala v. Suncrest Orchards, Inc.,* 130 Or 612, 280 P 344 (1929). It properly vacated its prior judgments in order to affirm the decision of the Board of Commissioners without making special findings of fact.

## II. On the merits

■ Petitioners contend that the rezoning was improperly allowed because there was no showing of public need for the change as required by *Fasano v. Washington Co. Comm.,* supra, and because the change did not comply with the 1990 comprehensive plan as required by *Baker v. City of Milwaukie,* supra. We agree that the zone change was invalid because it did not comply with the comprehensive plan.

■ It is now established that the comprehensive plan adopted by a local governmental unit is the controlling land-use planning document for the body and that a zoning ordinance allowing a more intensive use than the plan provides for is invalid. *Baker v. City of Milwaukie,* supra. Our Supreme Court also held in *Baker* that a comprehensive plan properly enacted as law controls zoning decisions irrespective of whether the mode of enactment is by ordinance or resolution.

■ Respondents contend that the comprehensive plan does not apply to the areas rezoned and made subject to an order of intent to rezone because the plan was adopted primarily to guide development of the metropolitan area and only tangentially concerns satellite communities such as the Coburg area.[⊕] It is argued that since the city limits of Eugene and Springfield do not encompass the entire metropolitan area, Lane County adopted the plan only for those substantial areas outside the city limits but within the metropolitan area. We do not agree with this contention. Although the comprehensive plan does focus on the developments of the metropolitan area, all of the land in the plan was within Lane County and was included in the plan diagram. The plan was formally adopted by the Lane County Board of Commissioners and became the controlling land-use instrument for that portion of Lane County.[⊕]

■ The preliminary draft of the Lane County plan was still in the formulation stage at the time of hearing and had not been formally adopted by the county. Until such a plan achieves the permanence of a properly enacted comprehensive plan, it cannot be the

---

[⊕] The plan itself states:

"Although the study area for the General Plan comprised more than 360 square miles of land containing such smaller communities as * * * Coburg * * * major attention was given to the metropolitan area containing some 90 square miles and 140,000 people." Eugene-Springfield Metropolitan Area 1990 General Plan (1990 Plan) at 1.

[⊕] The following language from the introduction to the 1990 Plan suggests that the public bodies adopting the plan considered it the controlling land-use instrument:

"The Plan, when adopted becomes public policy—therefore the method of adoption is by resolution of the City Councils and by order of the Board of Commissioners. Upon adoption it then becomes the official guidelines for future decision-making by these elected officials with respect to public facilities and services and private land use control. * * *" 1990 Plan, supra at 3.

controlling land-use document. *Baker v. City of Milwaukie,* supra; *see also Tierney v. Duris, Pay Less Properties,* 21 Or App 613, 536 P2d 435, Sup Ct *review denied* (1975).

We must therefore look to the comprehensive plan to determine whether the rezoning and order of intent to rezone were properly allowed. The plan designates that the tracts of land in controversy are for agricultural use only. Zoning ordinances allowing the much more intensive industrial use manifestly do not comply with that designation. Moreover, the zoning documents notably failed to comply with several essential objectives of the plan's design for growth:

"Preservation of prime, agricultural land from urban development. [⑦]

"* * * * *

"Reduction of scatteration and urban sprawl. [⑧]

"* * * * *

---

. · ⑦ The plan states that less than 30 percent of the land zoned for industrial activity in the metropolitan area is in actual usage, that 50 percent is unused and 18 percent is being used for residential purposes. 1990 Plan, supra at 31.

⑧ Scatteration and its effects are defined in the plan as follows:

"Scatteration is a form of leap-frogging urban growth that leaves vacant lands within and near the central portions of the metropolitan area and, at the same time, encourages the growth of isolated residential developments far from the metropolitan center. This form of growth currently plagues our area.

"Scatteration tends to:

"—increase the value of vacant land left between new developments to the point that the fill-in process is delayed.

"—cause unnecessary encroachment on good agricultural lands.

"—make it difficult to provide schools, roads, water, sewerage, fire protection and other public services.

"—destroy the concept of neighborhoods, due to the incomplete and inefficient use of the land resource.

"Encouragement of development of vacant land where services are available thus capitalizing on the public expenditures already made for these services.

"Shaping and regulating urban form and growth and preservation of the special character of the area.

"Protection of open space.

"* * * * *." Eugene-Springfield Metropolitan Area 1990 General Plan at 11.

We conclude that the zoning documents were invalid since the challenged change in use did not comply with the permissible use designated by the comprehensive plan or the several noted essential objectives of the plan's design for growth.

Reversed.

---

"—require that schools be located so far apart that many children must be bused to school.

"—require the installation and maintenance of more miles of streets than would otherwise be required.

"—cause neighborhood parks to be located too far apart for children to reach on foot.

"—lead to taxes to support government services at rates so high as to jeopardize the area's economy.

"—bring financial hardship on owners of undeveloped intervening properties through which utilities must pass." 1990 Plan, supra at 10-11.