590 So.2d 488 (1991)
GARDENS COUNTRY CLUB, INCORPORATED, a Florida corporation, Appellant,
v.
PALM BEACH COUNTY, a political subdivision of the State of Florida, Appellee.
No. 90-0247.
District Court of Appeal of Florida, Fourth District.
November 27, 1991.
Clarification Denied January 22, 1992.
Edna Caruso of Edna L. Caruso, P.A., Bruce G. Kaleita, West Palm Beach, and Gerald S. Lesher of Cooney, Ward, Lesher & Damon, West Palm Beach, for appellant.
Lee Rosenthal of the Palm Beach County Atty.'s Office, West Palm Beach, for appellee.

*489 OPINION ON REHEARING
PER CURIAM.
We grant the motion for rehearing, vacate the opinion previously filed in this case, and substitute the following.
Appellant Gardens Country Club, (the club), appeals from a final judgment of the circuit court upholding the county's denial of zoning relief.
The parties have stipulated to the factual background of this case which includes, inter alia, the following pertinent facts:
On December 14, 1988, the club contracted to purchase 734 acres of land in Palm Beach Gardens which, under the then-existing 1980 County Comprehensive Land Use Plan, authorized the property to be designated either Agricultural (AR) or Residential Estate (RE). The AR classification permitted one dwelling unit per five acres and the RE category allowed one dwelling unit per two and one-half acres or one unit per two acres in a planned unit development (PUD). At the time the purchase agreement was executed, the county had under consideration a revision of the 1980 Comprehensive Plan that would permit a density on the subject property of only one unit per twenty acres. The purchase contract allowed the club to avoid the transaction if the club was unable to obtain approval of satisfactory land use restrictions on the property.
The club entered into negotiations with the county in an attempt to avoid application of the more severe density restrictions to the development but was unsuccessful in the endeavor. Thus, on February 27, 1989, the club filed a formal application for use of the land as a PUD with a density of one unit per two acres as required by the 1980 Comprehensive Plan.
The application was reviewed for certification to the county commission, but was found insufficient because (1) the density and acreage data were omitted, (2) the operation agreement for the on-site sewer plant was not acceptable, and (3) a road access had to be changed. Those deficiencies were corrected and the application was scheduled to come before the planning commission at its April 17, 1989, meeting. However, the application was not certified at that meeting because, in the interim, the county commission, on March 29, 1989, had directed its staff not to certify any applications that were not consistent with the density requirements of the incipient 1989 Comprehensive Land Use Plan. That directive became the subject of ordinance 89-10 on July 5, 1989.
On May 8, 1989, the club filed a complaint against the county to require it to grant the club's application for use of the property in accordance with the 1980 Comprehensive Plan, to hold the county estopped from enforcing county ordinance 89-10 enacted subsequent to the club's application, and for damages for "taking" the club's property.
The trial court entered judgment in favor of the county, holding, among other things, that based upon Smith v. City of Clearwater, 383 So.2d 681 (Fla. 2d DCA 1980), rev. dismissed, 403 So.2d 407 (Fla. 1981), equitable relief was unavailable to the club because it had actual knowledge of the county's intention to revise its 1980 Comprehensive Plan, which would result in limiting the density allowable on the club's property. Furthermore, the trial court denied the request to invalidate county ordinance 89-10 or the 1989 Comprehensive Plan, and it found that the action of the county did not deprive the club of all beneficial use of the property.
On appeal the club suggests the trial court erred in ruling that the club's knowledge of the pending change precluded it from relying on the old or existing plan, which the club contends remained effective until August 1989 when the "new" 1989 County Comprehensive Land Use Plan was actually adopted. The club argues that the accepted legal principles of "zoning in progress" and the "fairly debatable rule" are not applicable in the setting of comprehensive plans but are confined to zoning cases. Furthermore, it is argued that the only ordinance relevant here is ordinance 89-10, on which the county relies. That ordinance, however, was improperly enacted vis-a-vis a modification of the 1980 Comprehensive *490 Land Use Plan and, in addition, was enacted long after the club's application was filed.
The county suggests, to the contrary, that the club's knowledge that the county had under consideration various changes to the 1980 Comprehensive Plan precludes the equitable and legal relief sought because of the "zoning in progress" rationale. It is noteworthy that the county concedes its ordinance 89-10 was not a "moratorium ordinance" and that it merely directed that all applications for residential zoning be reviewed for compliance with the contemplated comprehensive plan.
The club's amended complaint alleged that, on February 27, 1989, it filed an application to use the property as a PUD with a density of one unit per two acres. These allegations were admitted by the county in its answer. The record further contains a trial memorandum filed by the county with the trial court which states that "[o]n April 17, 1989, the defendant's [the club] application for rezoning and special exception was in compliance with existing regulations." (Emphasis added). In view of this memo in the record, it seems to us that the critical issue is the authority of the county to refuse to allow the club to develop its property in conformity with a density provided by the existing 1980 Comprehensive Plan and to require the club to meet the more rigorous requirements of the 1989 Comprehensive Plan adopted long after the club's application had been filed. Resolution of that issue depends upon whether there is a distinction between a comprehensive plan and zoning ordinances in applying settled legal principles.
In Machado v. Musgrove, 519 So.2d 629, 631-32 (Fla. 3d DCA 1987), rev. denied, 529 So.2d 694 (Fla. 1988), the court explained the difference between planning and zoning functions as follows:
A local comprehensive land use plan is a statutorily mandated legislative plan to control and direct the use and development of property within a county or municipality. § 163.3167(1), Fla. Stat. (1985); Southwest Ranches Homeowners Ass'n v. Broward County, 502 So.2d 931 (Fla. 4th DCA 1987). The plan is likened to a constitution for all future development within the governmental boundary. O'Loane v. O'Rourke, 231 Cal. App.2d 774, 782, 42 Cal. Rptr. 283, 288 (1965).
Zoning, on the other hand, is the means by which the comprehensive plan is implemented, City of Jacksonville Beach v. Grubbs, 461 So.2d 160 (Fla.1st DCA 1984), and involves the exercise of discretionary powers within limits imposed by the plan. Baker v. Milwaukee [271 Or. 500], 533 P.2d 772 at 775 (1975). It is said that a zoning action not in accordance with a comprehensive plan is ultra vires. Haar, In Accordance With A Comprehensive Plan [68 Harv. L.Rev.], at 1156.
As the court said in Machado, comprehensive planning provisions as envisioned in Chapter 163, Florida Statutes, are not zoning laws. The zoning laws implement the comprehensive plan, and they must be consistent with it. To that extent the comprehensive plan is a limitation on a government's otherwise broad zoning powers. City of Jacksonville Beach v. Grubbs, 461 So.2d 160 (Fla. 1st DCA 1984), rev. denied, 469 So.2d 749 (Fla. 1985).
Finally, section 163.3194(1)(b), Florida Statutes (1989), provides, in pertinent part, as follows:
During the interim period when the provisions of the most recently adopted comprehensive plan, or element or portion thereof, and the land development regulations are inconsistent, the provisions of the most recently adopted comprehensive plan, or element or portion thereof, shall govern any action taken in regard to an application for a development order.
Section 163.3197, Florida Statutes (1989), also expressly provides that where, prior to the adoption of a revised plan, a local government has adopted a comprehensive plan, that plan shall have such force and effect as it had at the date of its adoption until a new revised comprehensive plan is adopted by the local government pursuant to the Local Government Comprehensive Planning Act.
*491 It thus appears that with regard to the property in the present case, at all pertinent times, it was subject to the provisions of the 1980 Comprehensive Plan and not the 1989 Comprehensive Plan adopted by the county in August, 1989.
The trial court relied upon Smith v. City of Clearwater, 383 So.2d 681 (Fla. 2d DCA 1980), rev. dismissed, 403 So.2d 407 (Fla. 1981), for the proposition that, as the club was aware of the county's intention to revise the 1980 Comprehensive Plan, the club is precluded from relying on the 1980 Comprehensive Plan under the "zoning in progress" rationale. However, Smith is a zoning, not a planning, case. Neither the "fairly debatable" nor the "zoning in progress" zoning rule is applicable here because of the different functions of planning and zoning. For example, as pointed out above, Chapter 163 provides that the existing comprehensive plan provisions are effective and shall have the force and effect they had the day they were adopted until changed by a subsequent comprehensive planning law.
The county could have avoided this controversy had it enacted a moratorium ordinance pending its consideration of the comprehensive plan's revision, but it did not do so. As the court stated in Franklin County v. Leisure Properties, Ltd., 430 So.2d 475, 481 (Fla.1st DCA), rev. denied, 440 So.2d 352 (Fla. 1983):
A local government may be confronted with the need to amend its current plan prior to the adoption of a new plan in order to prevent the establishment of undesirable construction which would be inconsistent with the goals of the new plan. Nothing in section 163.3197 prohibits such an amendment. Nevertheless, we affirm the summary judgment on Count III on the ground that the county did not comply with statutory procedural requirements in enacting the moratoria.
We hold that the ordinance passed June 20, 1989, was an after-the-fact effort to dignify the county's resolution of April 6, 1989, directing staff to defer any application not consistent with the contemplated 1989 Comprehensive Plan. Furthermore, ordinance 89-10 was ineffective as a zoning ordinance to the extent that it conflicts with the provisions of section 163.3197, a state statute. That statute mandates that the provisions of a comprehensive plan shall control until a subsequent revision or change to the plan is enacted. Ordinance 89-10 purports to nullify that statutory provision as of the date of the passage of the ordinance.
In view of the foregoing, we reverse the judgment appealed from and remand the cause to the trial court with directions to reconsider appellant's application in the light of the provisions of the 1980 Comprehensive Plan.
DOWNEY and HERSEY, JJ., and FRANK, RICHARD H., Associate Judge, concur.