712 So.2d 398 (1998)
GARDENS COUNTRY CLUB, INC., a Florida Corporation, Appellant,
v.
PALM BEACH COUNTY, a political subdivision of the State of Florida, Appellee.
Nos. 96-1165, 96-4189.
District Court of Appeal of Florida, Fourth District.
March 11, 1998.
Rehearing Denied April 16, 1998.
*399 Steven L. Robbins of DeSantis, Gaskill, Smith & Shenkman, P.A., North Palm Beach, and Edna L. Carusa of Carusa, Burlington, Bohn & Compiani, P.A., West Palm Beach, for appellant.
Robert P. Banks, Assistant County Attorney, West Palm Beach, for appellee.
WARNER, Judge.
In ruling in favor of the County on Gardens Country Club's ("Gardens") complaint for inverse condemnation and violation of its substantive due process rights, the trial court determined that while the claims were ripe for review, there had been no total temporary taking of the property in question. The trial court also found that Gardens' vested right to develop the property in connection with the then-existing comprehensive plan did not rise to the level of a constitutionally protected property interest and, in the alternative, *400 that the County's action in denying development had not been arbitrary or capricious. We affirm on both issues.
This is the second appearance of this case in this court. Gardens Country Club, Inc. v. Palm Beach County, 590 So.2d 488 (Fla. 4th DCA 1991) ("Gardens I"), provides the essential facts of the dealings between the parties leading up to the present suit:
On December 14, 1988, the club contracted to purchase 734 acres of land in Palm Beach Gardens which, under the then-existing 1980 County Comprehensive Land Use Plan, authorized the property to be designated either Agricultural (AR) or Residential Estate (RE). The AR classification permitted one dwelling unit per five acres and the RE category allowed one dwelling unit per two and one-half or one unit per two acres in a planned unit development (PUD). At the time the purchase agreement was executed, the county had under consideration a revision of the 1980 Comprehensive Plan that would permit a density on the subject property of only one unit per twenty acres. The purchase contract allowed the club to avoid the transaction if the club was unable to obtain approval of satisfactory land use restrictions on the property.
The club entered into negotiations with the county in an attempt to avoid application of the more severe density restrictions to the development but was unsuccessful in the endeavor. Thus, on February 27, 1989, the club filed a formal application for use of the land as a PUD with a density of one unit per two acres as required by the 1980 Comprehensive Plan.
The application was reviewed for certification to the county commission, but was found insufficient because (1) the density and acreage data were omitted, (2) the operation agreement for the on-site sewer plant was not acceptable, and (3) a road access had to be changed. Those deficiencies were corrected and the application was scheduled to come before the planning commission at its April 17, 1989, meeting. However, the application was not certified at that meeting because, in the interim, the county commission, on March 29, 1989, had directed its staff not to certify any applications that were not consistent with the density requirements of the incipient 1989 Comprehensive Land Use Plan. That directive became the subject of ordinance 89-10 on July 5, 1989.
On May 8, 1989, the club filed a complaint against the county to require it to grant the club's application for use of the property in accordance with the 1980 Comprehensive Plan, to hold the county estopped from enforcing county ordinance 89-10 enacted subsequent to the club's application, and for damages for "taking" the club's property.
....
The record further contains a trial memorandum filed by the county with the trial court which states that "[o]n April 17, 1989, the defendant's [the club] application for rezoning and special exception was in compliance with existing regulations." (Emphasis added).
Id. at 489-90. The trial court entered judgment in favor of the County, but this court reversed, holding that ordinance 89-10 conflicted with section 163.3197, Florida Statutes (1989), which provides that an existing comprehensive plan shall continue to have the same force and effect that it had on the date of its adoption until the local government adopts a new revised comprehensive plan, pursuant to the Local Government Comprehensive Planning Act. See id. at 491. Thus, the ordinance was invalid to the extent that it conflicted with the state statute. We remanded for the trial court to reconsider Gardens's application in light of the 1980 Comprehensive Plan. See id.
While the appeal in Gardens I was pending, Gardens sought annexation of its property into the City of Palm Beach Gardens, which annexation occurred on March 21, 1991. The City ultimately approved Gardens's development plan, which included a density of one unit per two acres, the density Gardens had previously requested from the county.
Gardens then filed a supplemental complaint after remand from this court, seeking damages pursuant to 42 U.S.C. section 1983 for violation of Gardens's due process rights *401 and for inverse condemnation for a temporary taking of its property. The court granted the County's motion for summary judgment on the section 1983 claim. As to the takings claim (count II), the trial court held a non-jury trial. See Department of Agric. and Consumer Servs. v. Mid-Florida Growers, Inc., 521 So.2d 101 (Fla.1988) (in inverse condemnation suit, trial court decides whether taking has occurred and jury decides what is just compensation). The trial court concluded that Gardens's takings claim was ripe for adjudication, but it found that no taking had occurred because the County's actions, "although unlawful" pursuant to Gardens I, did not deprive Gardens of substantially all economically beneficial use of its property. In reaching this conclusion, the trial court compared the property's before and after fair market valuesbefore the county refused to rezone the property, it had a value of $8,000/ acre, and afterwards, a value of $3,000/acre. Since the property was still worth $2.2 million, the court concluded that Gardens had not been deprived of substantially all economically beneficial use of its property. The trial court also found that while Gardens had proved some investment-backed expectations, the reasonableness of these expectations was questionable. Gardens appeals from this final judgment.
The County claims that the case was not ripe for consideration of a takings claim because Gardens did not submit a plan for development under the proposed 1989 Comprehensive Plan. The ripeness doctrine requires, as an essential prerequisite to a regulatory takings claim, a final and authoritative determination of the type and intensity of development legally permitted on the subject property. See MacDonald, Sommer & Frates v. Yolo County, 477 U.S. 340, 348, 106 S.Ct. 2561, 2566, 91 L.Ed.2d 285 (1986); Williamson County Reg'l Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 186, 105 S.Ct. 3108, 3116, 87 L.Ed.2d 126 (1985). However, there is a futility exception to the ripeness doctrine. See Tinnerman v. Palm Beach County, 641 So.2d 523 (Fla. 4th DCA 1994); Glisson v. Alachua County, 558 So.2d 1030 (Fla. 1st DCA 1990). In the instant case, the trial court found that the only application which the County would have considered was an application consistent with the proposed 1989 comprehensive plan which allowed for densities of one unit per twenty acres, instead of the one per five density permitted in the 1980 Comprehensive Plan. Thus, the County's continued refusal to certify an application under the 1980 Comprehensive Plan, together with ordinance 89-10's requirement that all developments comply with the proposed revised comprehensive plan to be certified for approval, shows the futility of applying for any other development plans consistent with the 1980 Comprehensive Plan. Based on the futility exception, we find that the case is ripe for review.
We must first address whether the County's action in enacting ordinance 89-10 and refusing to certify applications inconsistent with the proposed revised comprehensive plan amounted to a due process deprivation or to a "taking." In Tampa-Hillsborough County Expressway Authority v. A.G.W.S. Corp., 640 So.2d 54 (Fla.1994), the supreme court explained the difference, quoting from Judge Griffin's concurring opinion in Department of Transportation v. Weisenfeld, 617 So.2d 1071, 1080 (Fla. 5th DCA 1993), approved, 640 So.2d 73 (Fla.1994), as follows:
The fifth amendment contains two discrete protections: "No person shall ... be deprived of ... property, without due process of law; nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V. The first of these is commonly called the "police power;" the second is the power of eminent domain. Patrick Wiseman, When the End Justifies the Means: Understanding Takings Jurisprudence In a Legal System With Integrity, 63 St. John's L.Rev. 433, 437 (1988).
Tampa-Hillsborough, 640 So.2d at 57. The supreme court further explained:
Thus, it is evident that while both constitutional theories involve "takings" and "police power," the analysis under due process is different from the analysis under just compensation. Regulations found by the courts to be invalid because they deprive landowners of substantially all use of their property without compensation are not ordinarily *402 struck down as unconstitutional. The government is forced to choose between paying just compensation to keep the regulation in effect or removing the regulation. In situations where state action is declared an improper exercise of police power under due process, the regulation is simply declared unconstitutional. Therefore, a land use regulation can be held facially unconstitutional without a finding that there was an uncompensated taking. The fact that we chose to strike down the statute in Joint Ventures [v. Department of Transportation, 563 So.2d 622 (Fla.1990)] clearly demonstrates that our decision was grounded upon due process considerations. Had we intended our decision to mean that the filing of the map of reservation constituted a per se taking, we would have left the statute intact.
Id.
In Gardens I, we invalidated ordinance 89-10 and remanded for the trial court to reconsider the application under the 1980 Comprehensive Plan. Thus, we considered the issue as a due process deprivation, rather than a just compensation taking. Otherwise, similar to Joint Ventures, we would have upheld the ordinance and considered it a per se taking of Gardens's property.
Nevertheless, Tampa-Hillsborough points out that "[a] taking occurs where regulation denies substantially all economically beneficial or productive use of land. Moreover, a temporary deprivation may constitute a taking." 640 So.2d at 58 (citing First English Evangelical Lutheran Church v. County of Los Angeles, 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987)). In First English, the county passed a moratorium prohibiting all building in a flood prone area. The Supreme Court held that even though the ordinance may subsequently be declared invalid or be withdrawn by the county, where a landowner is denied all use of his property under the ordinance, a temporary taking occurs which demands a remedy under the just compensation clause. See 482 U.S. at 318, 107 S.Ct. at 2388. Although Tampa-Hillsborough relies on First English, it actually expands its holding to cases involving the deprivation of "substantially all economically beneficial or productive use of land," instead of simply all use of property as set forth in First English. See Tampa-Hillsborough, 640 So.2d at 58. We conclude, therefore, that a partial temporary taking requires compensation under Tampa-Hillsborough if it amounts to a deprivation of substantially all economically beneficial use of the property.
It is implicit that the trial court found that the temporary deprivation claim in this case involved less than all economically beneficial or productive use of land. The court then made factual inquiry as to whether the regulation amounted to a taking. Such an inquiry includes the analysis of (1) the economic impact of the regulation on the claimant and (2) the extent to which the regulation has interfered with reasonable investment-backed expectations. See Reahard v. Lee County, 30 F.3d 1412 (11th Cir.1994), cert. denied, 514 U.S. 1064, 115 S.Ct. 1693, 131 L.Ed.2d 557 (1995). The trial court made an evaluation of whether Gardens was deprived of substantially all economically beneficial use of the property based upon the evidence presented at trial. The trial court found that the value of the land before the County refused the application for rezoning under the 1980 Comprehensive Plan was $8,000 per acre and after the County refused to consider the rezoning application was $3,000 per acre. As the remaining value was more than a negligible amount and constituted a significant benefit, the trial court determined that it did not constitute a taking of substantially all economic benefit. The court also reviewed the evidence as to what the investment-backed expectations of the owners were and concluded that these expectations were not reasonable. See Graham v. Estuary Properties, Inc., 399 So.2d 1374, 1380 (Fla.1981); see also Florida Game and Fresh Water Fish Comm'n v. Flotilla, Inc., 636 So.2d 761 (Fla. 2d DCA 1994). As there is competent substantial evidence to support the court's findings, we affirm as to the inverse condemnation claim.
Gardens also sought relief in its supplemental complaint pursuant to 42 U.S.C. section 1983, alleging: it had a liberty or property interest in having its application *403 certified and heard; the County had directed its staff not to consider any applications for rezoning not in conformance with the 1989 Comprehensive Plan; the County's actions were arbitrary and capricious; and it had suffered resulting damages in its expenditure of fees and costs in establishing the right to have its rezoning application heard. Gardens also sought costs associated with maintaining its interest in the subject property.
A property owner must meet two prongs in order to prove a compensable claim under 42 U.S.C. section 1983. First, there must be a deprivation of a constitutionally protected interest. Second, the court must determine that the deprivation was the result of an abuse of governmental power such that the government acted arbitrarily and unreasonably in depriving the property owner of its constitutionally protected interest. See Executive 100, Inc. v. Martin County, 922 F.2d 1536, 1541 (11th Cir.1991). The Executive court noted that, as to the first prong, the plaintiffs alleged that the value of their property had diminished significantly as a result of the County Commission's action in refusing to rezone their property. The court said that, "[i]f the plaintiffs prove that this diminution was more than a simple fluctuation in value incident to governmental decisionmaking, which is a noncompensable hazard of ownership, then they will have shown a deprivation of a property right." Id. (citations omitted). Thus, an arbitrary and capricious due process claim may be based upon the effect on the value of property of legislative determinations such as zoning.
The County argues that under McKinney v. Pate, 20 F.3d 1550 (11th Cir.1994), cert. denied by McKinney v. Osceola County Bd. of County Comm'rs, 513 U.S. 1110, 115 S.Ct. 898, 130 L.Ed.2d 783 (1995), Gardens does not have a constitutionally protected interest because its interest is one created by state law, namely a right to a zoning classification. Although the McKinney court determined that substantive due process protection did not include rights created by state law only, it specifically limited its holding to "executive acts" and found that its analysis regarding the substantive/procedural distinction would be "inappropriate" for "Legislative" acts. Id. at 1557 n. 9. This is clarified in Villas of Lake Jackson, Ltd. v. Leon County, 121 F.3d 610 (11th Cir.1997), in which the court considered the county's down-zoning of the landowner's property, which it assumed for purposes of the opinion was a legislative act. In considering the landowner's arbitrary and capricious due process claim, the court stated, "[a] landowner's vested rights created by state law may indeed constitute property subject to the arbitrary and capricious substantive due process protections under the federal Constitution." Id. at 614 (citations omitted). Thus, we reject the County's reliance on McKinney.
In granting summary judgment, the trial court determined that Gardens did not have a constitutionally protected interest. We disagree with this finding. Gardens claimed that it had been denied a lawful use of its property by the legislative act of the county in passing ordinance 89-10 and refusing to certify its application for development, a fact pattern analogous to the one in Villas of Lake Jackson. The trial court reasoned that Gardens I did not require the County to approve the development submitted by Gardens, but merely to consider the plan under the 1980 Comprehensive Plan instead of the 1989 Comprehensive Plan. In reviewing the development plan, the County had the discretion to deny the application on other grounds even under the 1980 Comprehensive Plan, and it did not have to approve the maximum density allowed under the plan. See Board of County Comm'rs of Brevard County v. Snyder, 627 So.2d 469, 475 (Fla.1993). While we agree that the County may have had some discretion to deny a request for rezoning under the 1980 Comprehensive Plan, the County refused to even consider any development submitted pursuant to that plan and instead would consider only plans submitted in conformance with the 1989 Comprehensive Plan which reduced density from one unit per five acres to one unit per twenty acres. Gardens challenged the County's actions in refusing to consider any rezoning application under the 1980 Comprehensive Plan. The injuries it alleges as a result of the County's action are only those which resulted from the *404 County's refusal to consider its application through its directions to staff and from the enactment of ordinance 89-10. These consist of the cost to overturn the decision in state court and the carrying costs of the property during that period. Because Gardens had made a valid application for rezoning under the 1980 Comprehensive Plan, which the County stipulated was fully in compliance with existing regulation, it had a vested right to have the County consider its development under the 1980 Comprehensive Plan. By denying Gardens this right, the county precluded a substantial use of its land, because the zoning on its property was reduced to no more than one unit per twenty acres of land. We consider this a property right subject to due process protections. See Villas of Lake Jackson.
As to the second prong which a property owner must meet to prove a compensable claim under section 1983, in Eide v. Sarasota County, 908 F.2d 716 (11th Cir. 1990), the court explained that an arbitrary and capricious due process claim could be either a facial or an as-applied challenge. "In the case of an as applied challenge, the remedy is an injunction preventing the unconstitutional application of the regulation to plaintiff's property and/or damages resulting from the unconstitutional application." Id. at 722. Gardens's initial complaint in this cause sought to prevent the application of ordinance 89-10 to its property and to prevent the County's direction to its staff not to certify any rezoning requests which were not in conformance with the 1989 Comprehensive Plan. Thus, it was an as-applied challenge to the ordinance. Its supplemental complaint under section 1983 simply requests the consequential damages which it incurred as a result of the unconstitutional application of the ordinance and directives to its property.
The trial court determined that the action of the board was not arbitrary or capricious so as to amount to an invalid exercise of its police power. At worst, the trial court said, the board acted pursuant to a misjudgment of law that the concept of zoning in progress applied to rezonings pending the adoption of a new comprehensive plan. See Condor Corp. v. City of St. Paul, 912 F.2d 215 (8th Cir.1990). Substantive due process challenges are analyzed under the rational basis test; that is, a legislative act of the government will not be considered arbitrary and capricious if it has "a rational relationship with a legitimate general welfare concern." Restigouche, Inc. v. Town of Jupiter, 59 F.3d 1208 (11th Cir.1995) (quoting Corn v. City of Lauderdale Lakes, 997 F.2d 1369, 1388 (11th Cir.1993), cert. denied, 511 U.S. 1018, 114 S.Ct. 1400, 128 L.Ed.2d 73 (1994)). In the instant case, the County was undertaking a general revision of its Comprehensive Plan prior to receiving the PUD application on this property. Not wishing to permit development inconsistent with the plan it was considering, it elected to refuse new applications, such as Gardens's. Its direction to its staff and the adoption of Ordinance 89-10 were done in furtherance of its goal of effectuating the planned amendment without allowing development inconsistent with it. Had the County been considering a zoning amendment rather than a planning decision, the rationale of "zoning in progress" may have been appropriate. See Gardens I, 590 So.2d at 491. Because there was "a plausible, arguably legitimate purpose" for the actions of the county in passing Ordinance 89-10, the rational basis test is met, and summary judgment is appropriate. See Restigouche, 59 F.3d at 1214.
We distinguish City of Margate v. Amoco Oil Co., 546 So.2d 1091, 1094 (Fla. 4th DCA 1989), in which we held that a governmental agency acts arbitrarily when it avoids its duty by unreasonably delaying a matter so as to effectuate a change in the law adverse to the applicant. In that case, the landowner had applied for a building permit to construct and operate a service station upon a parcel which permitted that use. The city rejected the application without justification, other than the city determined that it did not want a service station at that location. After the city denied the application, and while the land owner was trying to resolve the problem, the city undertook to rezone the property so that a service station could not be permitted. This fact scenario differs substantially from the facts of the instant case. At the time Gardens applied for development *405 approval, the County was extensively involved in amending its Comprehensive Plan, including the downzoning of Gardens's property, a fact which the owners of Gardens knew before they even entered into the contract to purchase the property. Moreover, Margate was not decided under section 1983 and substantive due process analysis.
For the foregoing reasons, we affirm the summary judgment on Gardens's substantive due process claim. We also affirm the trial court's ruling granting summary judgment on the procedural due process claim. See Bello v. Walker, 840 F.2d 1124, 1128 (3d Cir.1988).
Affirmed.
SHAHOOD and GROSS, JJ., concur.