[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 21, 2012
JOHN LEY
CLERK

_____

No. 10-12099

_____

D. C. Docket No. 1:05-cv-00158-MP-AK

ARTHUR D. WEISS,

Plaintiff-Appellant,

versus

CITY OF GAINESVILLE, FLORIDA,
a municipal corporation organized
under the laws of the State of Florida,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(March 21, 2012)

Before EDMONDSON, ANDERSON and FARRIS,* Circuit Judges.

_____
*Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by
designation.

PER CURIAM:

Arthur Weiss, a Florida land developer, appeals the district court's grant of summary judgment for the City of Gainesville in a lawsuit he brought against the City. We have jurisdiction under 28 U.S.C. § 1291 and affirm. We also affirm the district court's denial of Weiss's motion to enlarge the discovery period. Finally, we deny Weiss's motion to certify to the Florida Supreme Court the question of whether "self-amending" provisions in comprehensive land use plans are unlawful under Florida law.

## I. BACKGROUND

### A. Comprehensive Plans and Zoning

Chapter 163 of Florida Statutes provides for the adoption and amendment of "comprehensive plans" by municipalities and counties. *See* Fla. Stat. § 163.3167. A locality's comprehensive plan controls and directs the use and development of property within the locality. *See id*. § 163.3177(1); *Gardens Country Club, Inc. v. Palm Beach County*, 590 So. 2d 488, 490 (Fla. Dist. Ct. App. 1991). A comprehensive plan includes a number of "elements," including a "future land use plan element." Fla. Stat. § 163.3177(6). That element's text and map provide the future land uses for the locality's properties. *Id*. Section 163.3184 of Florida Statutes provides the process for adoption of comprehensive plan amendments. The

2

process requires hearings, notice and comment periods, and final approvals by the state land planning agency. *Id*. § 163.3184(3).

The zoning of a property must be consistent with its land use designation under the prevailing comprehensive plan. *Gardens Country Club*, 590 So. 2d at 490. In addition, under Florida law, a city cannot deny zoning approval on the basis that it intends, in the future, to amend its comprehensive plan to change the land use designation of the applicant's land to a use inconsistent with the zoning for which the applicant applied. *Id*. at 490-91. If the land use of the applicant's land under the prevailing comprehensive plan is consistent with the zoning the applicant seeks, the city must consider the zoning application. *Id*.

B.      Facts and Proceedings in the District Court

In 1989, Arthur Weiss sought to have the City of Gainesville annex a 940-acre parcel he owned in return for the City's allowing him to apply to build a development on the land. Weiss and the City entered into an annexation agreement providing that, upon annexation, the City would "do what is reasonably necessary and within its governmental powers and authority to grant and allow development permits and approvals for the orderly development of the Property." The parties expressly acknowledged in the agreement that Weiss would have to obtain zoning and "development of regional impact" approval to proceed with the development.

3

The agreement also expressly provided that nothing contained within it prevented the City from (1) "exercising its proper zoning and development review powers for the protection of the public" or (2) "amend[ing] its development regulations, building codes, zoning codes, land use plans or other ordinances for the protection of the public health, safety and welfare."

The annexation agreement also provided that "[t]he City shall immediately initiate the process to establish . . . annexation pursuant to a referendum in compliance with Section 171.0413, Florida Statutes" and that "[t]his agreement shall become effective upon the annexation of the Property into the City." At the time, Florida Statutes § 171.0413 required that a "dual majority" of voters approve an annexation for it to take effect. The City immediately held the dual-majority referendum vote. The vote failed. In 1990, Florida changed its annexation procedures to no longer require a dual-majority referendum. In 1992-1993, the City, using the new procedures, annexed Weiss's land.

Following annexation, Weiss asked the City to amend its then-operative 1991-2001 Comprehensive Plan to designate his property's land use as "planned use district." The planned use district designation would allow him to apply for "planned development" zoning, which in turn would allow him to build his development. The City honored Weiss's request and recommended the addition of

4

policies 2.3.6, 2.3.7, and 2.3.8 to the Plan. Policy 2.3.6 established Weiss's

development "using the PUD (Planned Use District) land use category." Policy

2.3.7 listed the distribution of land uses within the development. Policy 2.3.8

established standards for the property's development. Policy 2.3.8(m) provided:

> m. The planned development zoning ordinance consistent with the
> [planned use district] overlay district must be adopted by the City
> Commission within 4 years or the overlay district shall be null and
> void, and the Future Land Use Map shall be amended accordingly
> upon proper notice. The underlying Future Land Use Map Category is
> "Single-Family"; such category is inapplicable as long as the property
> is developed and used in accordance with the development plan
> approved in the ordinance rezoning this property to Planned
> Development "PD".

The City submitted proposed policy (m) to Weiss for comment. Weiss responded in

writing:

> Please be advised that I have reviewed the attached Text Amendment
> and request that the City of Gainesville affirmatively act upon said
> Amendment. The Amendment . . . adds . . . at subsection M, that, in
> essence there shall be four (4) years to achieve approval of the
> planned development.

On August 22, 1994, the City Commission adopted the proposed amendments as

Ordinance 4000. The same day, the City adopted companion Ordinance 4001,

which "amended . . . the land use category [of Weiss's land] . . . to . . . 'Planned

Use District'" and provided that "[t]he [Planned Use District] land use category on

the [Weiss] property shall be governed by Policies 2.3.6, 2.3.7, and 2.3.8 of

5

Objective 2.3. of the Future Land Use Element of the . . . Comprehensive Plan adopted by ordinance no. [4000] . . . ." Ordinance 4001 also provided that "[t]he City Manager is authorized and directed to make the necessary changes in maps . . . in the . . . Comprehensive Plan . . . in order to comply with this ordinance."

Weiss then commenced the process of obtaining development approvals. Weiss's development was a "development of regional impact" due to its size and complexity. *See* Fla. Stat. § 380.06(1). Florida law required that the relevant regional planning agency review development of regional impact applications for "sufficiency" and notify applicants of "insufficiencies" in their applications. *Id*. § 380.06(10)(b). An applicant was required to respond to up to two sufficiency requests. *Id*. After that, he could either (1) voluntarily choose to provide more information or (2) refuse to provide more information and demand that the agency schedule a hearing. *Id.* If he chose (2), the local government would hold a hearing, consider the agency's recommendation, and decide whether to approve (with or without conditions) or deny the application. *Id*. §§ 380.06(11)-(15).

By late 1997, Weiss had not yet submitted his development of regional impact application. His August 22, 1998 zoning deadline was fast approaching. In November 1997, the Weiss team thus devised a schedule for obtaining, by August 22, 1998, an amendment to the Plan to extend the zoning deadline. The team also

devised a "'what if' schedule assuming [that] a time extension for [planned development] zoning is not granted." The document outlining the "what if" schedule explicitly acknowledged that "[t]he [planned development] rezoning must be adopted prior to 8/22/98."

Later that month, Weiss petitioned the City to amend the Plan to extend the zoning deadline one year. By July 1998, the City Commission had approved the amendment, but the Department of Community Affairs had yet to review and approve it. John Percy, a member of Weiss's team, met with Dean Mimms, the City's Chief of Comprehensive Planning, to ask what would happen if the Department did not approve the amendment by the August 22, 1998 zoning deadline. Mimms told Percy that Weiss could continue with the project even if the Department did not approve the amendment until after August 22. In October, the Department approved the amendment. Weiss now had until August 22, 1999 to secure zoning approval.

In December 1998, Weiss submitted his development of regional impact and zoning applications. The City believed that hearings on the two applications should run in tandem with each other, and that the conditions for their approval should be identical so that a single source document would govern the project (if approved). Thus, the City allowed the development of regional impact review process to

proceed and did not immediately grant Weiss's zoning application.

The regional planning agency conducted a review of Weiss's development application and found it insufficient because it did not accurately report transportation and environmental impacts of the project. Weiss responded to the insufficiency findings, but the agency found that the application remained insufficient. With no development approval in hand, and the extended zoning deadline of August 1999 approaching, Weiss again petitioned the City to amend the Plan to extend the deadline by another year. Weiss then continued with the development of regional impact process, providing his second and "final" response in July 1999. In August, the agency sent a letter to Weiss, telling him that his responses were still insufficient. Weiss's project manager sent the agency a letter saying that Weiss would not attempt any future sufficiency responses. The agency informed the City, and the City scheduled a public hearing on the development application. Weiss then sent a letter to the City requesting that the City postpone the hearing until he notified the City that he wanted to re-schedule it.

In May of 2000, Weiss submitted his second "Final Traffic Study" to the agency, which it found insufficient in June 2000. Weiss responded that he would attempt to provide additional information. In July 2000, Weiss's proposed amendment extending the zoning deadline a second time, to August 22, 2000, was

enacted. By that time, the new deadline was already less than two months away. Weiss thus petitioned the City Commission to extend the deadline a third time, to August 22, 2001. On October 23, 2000, the City denied the petition.

On October 25, Weiss's attorney sent a letter to the City Attorney "request[ing] that the City advise us of what the Comprehensive Plan and zoning is for [Weiss's property]." On November 7, the Department of Community Development responded that the land use category was single-family and the pre-annexation agriculture zoning remained in place. The City then removed the planned use district overlay designation for Weiss's property from the Plan's future land use map.

From 2000 to 2002, the Commission began a series of hearings to amend the Comprehensive Plan in a variety of ways not related to the Weiss project. The Commission bundled with these amendments the updates it needed to make to the Plan to (1) update the land use plan element to reflect the reversion of the Weiss land's designation to single-family use and (2) delete the Plan's references in policies 2.3.6 through 2.3.8 to Weiss's project. The proposed amendments provided that they would not be effective until officially enacted. In March 2002, the Commission enacted these amendments in Ordinances 0-01-20 and 0-01-17.

In 2005, Weiss sued the City. His complaint contained four causes of action.

9

First, he stated a 42 U.S.C. § 1983 claim for violations of his "vested rights, property interests and contractual rights" under Article I, § 10, and the Fourteenth Amendment, of the U.S. Constitution. Weiss's second cause of action alleged that the City breached its obligations under the annexation agreement. Third, Weiss sought a declaratory judgment that he had a vested right in the planned use district designation. Fourth, Weiss brought an inverse condemnation claim under the Florida Constitution.

The parties proceeded to discovery. The district court set a discovery cut-off deadline of August 1, 2007. In February 2007, Weiss moved to amend his complaint. The proposed amended complaint (1) added a takings claim under the U.S. Constitution and (2) added to the § 1983 claim allegations that the City violated the Fourteenth Amendment's Equal Protection Clause and procedural Due Process Clause. On August 21, the City moved for summary judgment on the claims contained in Weiss's original complaint. On September 27, the district court granted Weiss's motion to amend his complaint and ordered that it would "apply all pending motions . . . to the amended complaint." In March 2008, the district court heard arguments on all pending motions. In March 2010, it granted summary judgment for the City on all of Weiss's claims. It held that policy (m)'s language

ma[de] clear that the [planned use district] overlay would naturally

10

terminate if final zoning approval was not obtained by a certain deadline. With the Commission's October 23, 2000, vote to deny his third extension request, Weiss thus failed to secure the required [planned development] rezoning by [the] extended deadline. The [planned use district] overlay automatically dissolved at that time, and the underlying future land use element of "Single Family" became in place after that vote by automatic reversion . . . .

This foregoing automatic reversion was self-effectuating and did not require any new "public hearings" because the very language in the Policies of the Comp[rehensive] Plan provided for this automatic reversion and had already been the subject of the required public hearings back in 1994, and had already been the subject of [Department of Community Affairs] review and approval, back in 1994.

Weiss appealed. He also moved this court to certify to the Florida Supreme Court the question "whether *Fla. Stat.* § 163.3184 and *Fla. Stat.* § 163.3189 exclude[] self-amending comprehensive plan policies that automatically amend the future land use element of a comprehensive plan."

## II. DISCUSSION

We review the district court's grant of summary judgment *de novo, Tana v. Dantanna's*, 611 F.3d 767, 772 (11th Cir. 2010), viewing all genuinely disputed facts in the light most favorable to Weiss. *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). Interpretation of agreements and comprehensive plans, and the determination of whether they are ambiguous, is a question of law which the district court may resolve on summary judgment and

11

which we review *de novo*. *See Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1290 (11th Cir. 2011); *Nassau County v. Willis*, 41 So. 3d 270, 278 (Fla. Dist. Ct. App. 2010). We review the denial of a motion to re-open discovery for an abuse of discretion. *White v. Coca-Cola Co.*, 542 F.3d 848, 853 (11th Cir. 2008).

A.      Meaning of Policy (m)

Weiss's central challenge is to the district court's interpretation of policy (m). He argues that policy (m) required the official passage of a Plan amendment before his property reverted to single-family use. He bases this interpretation on policy (m)'s provision that "the Future Land Use Map shall be *amended* accordingly" (emphasis added). Thus, he claims, when the City Commission denied him a third extension of the zoning deadline, his land use was still planned use district and would remain so until the City's official passage of a Plan amendment changing the map to reflect the land's single-family use. Until such passage, he argues, the City was required to hold hearings to consider his zoning and development applications.

The district court correctly interpreted policy (m). Policy (m) unambiguously provided that "[t]he underlying Future Land Use Map Category" of "'Single-Family' . . . [wa]s inapplicable [*only*] as long as the property [wa]s developed and used in accordance with the development plan approved in the

12

ordinance rezoning this property to Planned Development 'PD,'" and that if such an ordinance did not pass by the deadline, the property's "planned use district" overlay would "be null and void." When the City voted in October 2000 not to extend the zoning deadline for a third time, Weiss's failure to obtain an "ordinance rezoning this property to Planned Development" by August 22, 2000 became certain. At that point, under the unambiguous language of the policy, the planned use district overlay was "null and void" and the underlying single-family use was "[]applicable."

Policy (m)'s use of the word "amended" ("the Future Land Use Map shall be amended accordingly"), does not change the meaning of this language. That phrase clearly means that, in the event that Weiss failed to timely secure zoning approval, the City would, as a housekeeping matter, update the map to reflect the land's reversion to single-family use. In fact, Ordinance 4001 expressly authorized the City to "make the necessary changes in maps . . . in order to comply with this ordinance."

Because the planned use district overlay became "null and void" in October 2000, the City did not need to pass Ordinances 0-01-17 and 0-01-20 in order for Weiss's land use to revert to single-family. Anyone reading the Plan following the October 2000 vote would have read that "[t]he planned development zoning

13

ordinance . . . must be adopted by the City Commission by August 22, 2000 or the overlay district shall be null and void"; would have recognized that August 22, 2000 had passed; and would have therefore understood that the planned use district overlay had expired and the single-family use was applicable. The reader would have read policies 2.3.6 through 2.3.8 (which had become policies 2.3.8 through 2.3.10 for reasons not relevant here) and understood that they referred to a now-obsolete project. And the reader would not have seen a planned use district designation for Weiss's property on the Plan's map, because the City, pursuant to its authority under Ordinance 4001 to "make the necessary changes in maps . . . to comply with this ordinance," erased that designation following the October 2000 vote. Thus, in October 2000, "[t]he comprehensive plan as a whole, including the future land use map and all of the other policies of the plan, . . . that . . . determine what uses can be made of a specific tract of land," made clear that single-family was the only "use[] [that] c[ould] be made of [Weiss's] land." *Coastal Dev. of N. Fla., Inc. v. City of Jacksonville Beach*, 788 So. 2d 204, 208-09 (Fla. 2001). Ordinances 0-01-17 and 0-01-20 were thus mere housekeeping amendments. That these ordinances did not pass until 2002 says nothing about Weiss's land use designation from October 2000 through 2002.

Since Weiss's land use was single-family after October 2000, the City was

14

under no obligation thereafter, under *Gardens Country Club*, to consider Weiss's planned development zoning application. Such zoning is not permitted for single-family properties. And because planned development zoning was no longer available to Weiss, he could not build his development of regional impact on the land. Thus, the City was also under no obligation, after October 2000, to consider Weiss's development of regional impact application. Weiss's project was dead.

Weiss points to several actions the City took long after the passage of policy (m) that he claims support his argument as to policy (m)'s meaning. When a comprehensive plan is unambiguous, however, the parol evidence rule bars our consideration of extrinsic evidence of its meaning. *Mosley*, 635 F.3d at 1290; *TECO Barge Line, Inc. v. Hagan*, 15 So. 3d 863, 865 (Fla. Dist. Ct. App. 2009).

B.     Legality of Policy (m)

Weiss argues that, under the district court's interpretation, policy (m) was invalid because under Florida law, comprehensive plans cannot be "self-amending." He has also moved to certify this issue to the Florida Supreme Court.

Policy (m) is not "self-amending"; it is self-executing. When the City voted not to extend the zoning deadline in October 2000, the Plan was not amended without following the comprehensive plan amendment procedures required by Florida Statutes § 163.3184(3). Instead, the condition for the reversion of Weiss's

15

property to single-family (his failure to obtain zoning approval)—a condition specifically provided for in policy (m), which the City, in 1994, *did* pass in accordance with § 163.3184(3)—occurred.

Weiss cites to no Florida authority holding unlawful a comprehensive plan provision providing for such conditional land use designations. He argues that the district court's interpretation of policy (m) was "contrary" to the Florida Supreme Court's decision in *Coastal Development of North Florida, Inc. v. City of Jacksonville Beach*, 788 So. 2d 204 (Fla. 2001). *Coastal Development* is inapplicable. In that case, the Florida Supreme Court made clear that any amendment to a comprehensive plan's future land use map is a legislative policy decision subject to the "fairly debatable" standard of review. *Coastal Dev.*, 788 So. 2d at 209-10. *Coastal Development* thus does no more for Weiss than reiterate what § 163.3184 of Florida Statutes provides: *if* a city amends its plan, it must follow the procedures required by statute. But as we already established, the reversion of Weiss's property to single-family was *not* an amendment to the City's Plan, and so did not trigger those procedures.

In fact, the District Court of Appeal of Florida expressly approved of conditional land use designations such as policy (m) in *Nassau County v. Willis*, 41 So. 3d 270 (Fla. Dist. Ct. App. 2010). The comprehensive plan at issue in *Willis*

16

designated the land use of "all areas shown as wetlands on the Future Land Use

Map series" as "Conservation." 41 So. 3d at 272. The plan then qualified its

blanket "Conservation" designation:

> 1.09.03 Areas identified on the [Future Land Use Map] map series as wetlands are generally defined. A landowner may provide more detailed data to the County to clarify jurisdictional wetland areas. Those land areas determined by the Board of County Commissioners with the advice of the St. Johns River Water Management District . . . not to be jurisdictional wetlands will be allowed to be developed at the least intense adjacent land use densities and intensities.

*Id*. at 273. The future land use map identified the property at issue in *Willis* as

wetlands, and thus designated its land use "Conservation." *Id*. The would-be

developers of the property submitted a formal wetlands determination issued by the

River Water Management District concluding that a portion of the property was

actually uplands, not wetlands. *Id*. Based on this submission, they applied to have

their land use designation changed from "wetlands" to "Planned Unit

Development." *Id*. The county approved the application and re-categorized the

property's land use designation, thus permitting a higher-density development than

that permitted under the "Conservation" land use designation. *Id*. at 273-74.

Residents of Nassau County who opposed the development challenged its

consistency with the comprehensive plan. *Id*. at 274. "The crux of their argument,"

similar to Weiss's here, "was that Nassau County utilized Policy 1.09.03 to attempt

17

to evade amending the Comprehensive Plan" and that "the County's utilization of Policy 1.09.03 made the Comprehensive Plan 'self-amending,' which, in their view, is contrary to state law and leads to an absurd result." *Id*. at 275. The court of appeal rejected the plaintiffs' argument, holding that "Policy 1.09.03 is self-executing, reasonable, and not invalid under any state law." *Id*. at 279. It concluded that policy 1.09.03 "direct[ly], clear[ly], and simpl[y]" provided that "'[t]hose land areas determined . . . not to be jurisdictional wetlands will be allowed to be developed at the least intense adjacent land use densities and intensities.'" *Id*. at 278. Therefore, it held, "[t]he County's action is consistent with the Comprehensive Plan, because Policy 1.09.03 precisely provides that wetlands may be redefined . . . ." *Id*.

This case is like *Willis*. Like policy 1.09.03 in *Willis*, policy (m) here is "direct, clear, and simple": if Weiss failed to gain zoning approval by policy (m)'s deadline, the planned use district would be "null and void." Like policy 1.09.03 in *Willis*, policy (m) is "self-executing," not "self-amending." Like policy 1.09.03, policy (m) is "reasonable, and not invalid under any state law." *Willis*, 41 So. 3d at 279.

The Florida Supreme Court "[m]ay review a question of law certified by . . . a United States Court of Appeals . . . for which there is no controlling precedent of

18

the supreme court of Florida." Fla. Const. art. V, § 3(b)(6). "The decision to certify is discretionary with this Court," and "certifying every state law question which has been authoritatively decided by a Florida District Court of Appeal" would be an abuse of that discretion. *Farmer v. Travelers Indem. Co.*, 539 F.2d 562, 563 (5th Cir. 1976).[1] We will follow the Florida District Court of Appeal in *Willis* and affirm summary judgment, and deny Weiss's motion for certification to the Florida Supreme Court. *See, e.g.*, *Farmer*, 539 F.2d at 563. Even though the Florida Supreme Court could rule contrary to the appellate court's decision in *Willis*, Weiss does not offer, and we cannot find, a "persuasive indication" that it actually would change the law. *See McMahan v. Toto*, 311 F.3d 1077, 1080 (11th Cir. 2002) ("[T]he rule is that, absent a decision from the state supreme court on an issue of state law, we are bound to follow decisions of the state's intermediate appellate courts unless there is some persuasive indication that the highest court of the state would decide the issue differently."). We deny Weiss's motion to certify the issue of policy (m)'s legality to the Florida Supreme Court.

C.     Vested Rights Through Equitable Estoppel or Bad Faith

Weiss argues that the doctrines of "equitable estoppel and bad faith" entitle

---

[1]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

him to a declaratory judgment that Ordinances 0-01-20 and 0-01-17 are invalid. The crux of Weiss's argument is that, regardless of what policy (m) actually said, the City represented to him that his land use would not revert to single-family until the passage of Ordinances 0-01-17 and 0-01-20. Weiss argues that between October 2000 (when the City denied his third request for a zoning deadline extension) and March 2002 (when Ordinances 0-01-17 and 0-01-20 were passed), he "would have been able to demand a hearing and obtain a development order . . . and . . . zoning app[roval] . . . ."

The district court properly granted summary judgment for the City on Weiss's equitable estoppel claims. There is no record evidence that the City misled Weiss. *See Goodwin v. Blu Murray Ins. Agency, Inc.*, 939 So. 2d 1098, 1103 (Fla. Dist. Ct. App. 2006) ("[E]stoppel will not lie unless the party seeking to assert it was misled."). The only record evidence to which Weiss cites concerning actual representations made by the City relates to the conversation in July 1998 between the City's Chief of Comprehensive Planning, Dean Mimms, and one of Weiss's team members, John Percy, in which Mimms said that Weiss's project would not automatically expire if the Department of Community Affairs did not approve the first extension of the zoning deadline by August 22, 1998. Mimms's assurances communicated merely that a deadline extension amendment, if not officially passed

20

until after the expiration of the original deadline, would be retroactive to the date of the original deadline. Mimms's assurances did not in any way communicate that, if the City *denied* future deadline extension requests—whether before or after the expiration of the then-applicable deadline—Weiss's land use would not immediately revert to single-family. Weiss points us to no other evidence in the record that the City led Weiss to believe that policy (m) was not self-executing.

Even if Percy's affidavit can be read to assert that Mimms affirmatively told him that policy (m) was not self-executing, it does not create a "genuine" dispute as to whether Weiss was misled. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, . . . a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). Here, Weiss's assertion that he believed that he had until the passage of Ordinances 0-01-17 and 0-01-20 to obtain his approvals, based on Mimms's alleged representations, is "blatantly contradicted by the record" evidence from 1994 of Weiss's confirmation that he understood exactly how policy (m) worked: "there shall be four (4) years to achieve approval of the planned development." Weiss did not write, "there shall be four (4) years, plus the time it takes to amend the Plan, to achieve approval of the planned development." The affidavit is also

21

"blatantly contradicted" by the Weiss team's November 1997 "what if" schedule, which explicitly acknowledged that "[t]he [planned development] rezoning must be adopted prior to 8/22/98." The "version of events [related in Percy's affidavit] is so utterly discredited by the record that no reasonable jury could have believed him." *Scott*, 550 U.S. at 380, 127 S. Ct. at 1776. Summary judgment for the City on Weiss's equitable estoppel claims was proper.

So was summary judgment on Weiss's claims based on the City's alleged "bad faith." Weiss argues the City acted in bad faith when it refused to consider Weiss's development and zoning applications after it denied his third deadline extension request in October 2000. As discussed, the City's interpretation of policy (m) as self-executing was correct, and the City did not mislead Weiss to adopt any other interpretation. It follows that the City did not act in bad faith when it acted consistently with its interpretation of policy (m) and informed Weiss that he could no longer obtain zoning or development approval after October 2000. Weiss insists that "[o]n October 23 2000, [he] was told in writing that his [development of regional impact] hearing would occur later." Thus, he argues, the City acted in bad faith when it later told Weiss that it would *not* conduct such a hearing. But the only record evidence to which Weiss cites is the City Attorney's October 23 memorandum to the Commission, recommending that the Commission extend the

22

zoning deadline a third time, in which the City Attorney stated, "The proposed [development of regional impact] will be the subject of a future public hearing and is not part of this application [for an amendment extending the zoning deadline]." This document clearly did not promise Weiss a future development of regional impact hearing.

D. Substantive Due Process Claim

The district court also granted summary judgment for the City on Weiss's claim that the City violated his substantive due process rights. A plaintiff alleging such a violation must prove that the defendant (1) deprived him of a constitutionally protected property interest (2) for an improper motive and by means that were pretextual, arbitrary, capricious, and without any rational basis. *Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1577 (11th Cir. 1989). Weiss argues that the district court erred in its analysis of prong (2). We need not consider this argument because the court properly held under prong (1) that the City did not deprive Weiss of a constitutionally protected property interest. Weiss's alleged property interest was "the settled law of Florida which required the City to consider duly filed zoning applications under the existing land use designation of its comprehensive plan." We have already concluded that the land use designation of Weiss's property after October 2000 was single-family and that, therefore, the City

23

had no obligation to consider Weiss's planned development zoning application thereafter. The district court properly granted summary judgment for the City on this claim.

E.      Weiss's Waiver of Development of Regional Impact Hearing

Weiss next contends that the district court erred in finding that Weiss waived his right to his development of regional impact hearing. The district court applied its conclusion that Weiss waived this right to its analysis of Weiss's (1) substantive due process and (2) procedural due process claims. We have already determined that summary judgment for the City was proper on claim (1). Weiss asserted no constitutionally protected property interest.

Weiss's procedural due process claim was that the City "targeted Weiss and unfairly deprived him of a quasi-judicial hearing on his duly filed and pending [development of regional impact] and zoning applications . . . ." There is no evidence that the City deprived Weiss of a development of regional impact hearing to which he was due. In October 1999, Weiss asked the City to postpone the hearing indefinitely. From then until October 2000, the City and the agency held workshops and meetings with Weiss and informed him of ongoing insufficiencies in his application so that he could correct them. At no point during this period did Weiss ask the City to schedule the hearing. After October 2000, he was no longer

24

entitled to the hearing because his proposed development was inconsistent with his land's single-family use. The district court thus did not err in finding that Weiss waived his right to the hearing.

F.     Breach of Contract Claim

In deciding Weiss's breach of contract claim, the district court held that "under the unambiguous language of the [annexation] agreement, [the agreement] had no enforceability once the [dual-majority] referendum failed." Weiss argues that the agreement was, at least, ambiguous as to its enforceability if the dual-majority referendum failed but annexation occurred later through other means. Weiss is correct. The agreement provided that "[t]his agreement shall become effective upon annexation of the Property into the City." It did not condition the agreement's effectiveness on the *means* the City used to achieve that annexation. In 1992-1993, the City annexed Weiss's property under its new annexation procedures. It is therefore not "unambiguous[ly]" clear that the agreement was unenforceable once annexation occurred.

However, summary judgment for the City on Weiss's breach of contract claim was proper on a different ground. *See Edwards v. Niagara Credit Solutions, Inc.*, 584 F.3d 1350, 1354 (11th Cir. 2009) (this court may affirm a grant of summary judgment on a ground not relied upon by the district court). There is no

genuine dispute of fact as to whether the City breached its obligations under the annexation agreement. The agreement expressly provided that "[n]othing contained" in it prevented the City from exercising its powers to review and deny Weiss's development of regional impact and zoning applications. The agreement thus expressly permitted the actions of which Weiss complained in his breach of contract claim.

G.  "Oral" Motion for Summary Judgment

Weiss contends that the City orally moved for summary judgment on the new claims in Weiss's amended complaint (the U.S. constitutional takings claim, and the equal protection and procedural due process claims). The City never orally moved for summary judgment. Instead, the district court granted Weiss's motion to amend his complaint and ordered that it would "apply all pending motions" (including the City's *written* motion for summary judgment on Weiss's original complaint) "to the amended complaint." Thus, Weiss's argument that the district court "erred in granting the City's unnoticed oral summary judgment [motion]" fails.

Weiss's related demand that he "be permitted to take discovery, [and] receive and respond to a properly filed and supported motion for summary judgment addressing the[] claims [in the amended complaint]," also fails. Weiss invited the

26

district court to apply existing motions to both complaints, and in response, the court's order stated that it would "apply all pending motions . . . to the amended complaint." Weiss conceded in the district court that the amended complaint "presents the same facts [and] the same misconduct" as the original complaint and that "[t]he only material change is based on testimony of [Weiss's] attorney," which Weiss had already secured. He thus admitted that the district court's grant of his motion to amend created no need for additional discovery. Finally, Weiss was permitted to, and did, argue in his opposition to summary judgment that the court should deny summary judgment for the City on the new claims in the amended complaint. Weiss' argument that the district court never should have ruled on the City's summary judgment motion as applied to the new claims in the amended complaint thus fails.[2]

H.    Motion To Re-Open Discovery

Weiss next argues that the district court erred in denying his motion to enlarge the discovery period. On August 1, 2007—the last day of the discovery period—Weiss filed a motion to enlarge the discovery period so that he could

---

[2]As Weiss concedes in his Reply Brief, he does not argue on appeal the merits of his equal protection claim. Similarly, he does not argue the merits of his two takings claims. Issues that are not briefed on appeal are considered abandoned. *Denney v. City of Albany*, 247 F.3d 1172, 1182 (11th Cir. 2001). Accordingly, we do not reach the merits of these claims.

depose Norman Bowman. Weiss had originally scheduled the deposition of Bowman for February 2007, but Weiss's attorney canceled it and did not attempt to reschedule it until June 3, at which point Bowman was out of the state indefinitely. On September 7, Weiss renewed his motion. The court denied the motion because Weiss's own dilatory tactics were the reason he did not secure Bowman's deposition during the discovery period. This was not an abuse of discretion.

Weiss also contends that the district court ignored the motion's specific request for additional discovery on the new claims in the amended complaint. The only request for discovery in the motion was the request to depose Bowman. The court did not ignore anything.

I.      District Court's "Fact Finding"

Finally, Weiss argues that the district court "improperly weighed the credibility of evidence" when it considered (1) the City's testimony that policy (m) was self-executing against (2) "the City's official announcements that the elimination of Weiss's [planned use district] land use . . . had not become legally effective." The court did no such thing. Weiss submitted no evidence that the City ever "officially announced" that Weiss's land use had not reverted to single-family in October 2000. Weiss cites exclusively to the language in Ordinances 0-01-17 and 0-01-20 stating that the ordinances would not become effective until found in

28

compliance with Florida law. That the housekeeping updates *reflecting* the 2000 land use reversion did not become effective until 2002 does not put into dispute the City's evidence that the reversion occurred in 2000.

## III. CONCLUSION

The district court's grant of summary judgment for the City, and its denial of Weiss's motion to enlarge the discovery period, are AFFIRMED. Weiss's motion to certify the issue of policy (m)'s legality to the Florida Supreme Court is DENIED.

AFFIRMED.